Nos. 22-13410, 22-14099, 23-10387, & 23-13177

# In the United States Court of Appeals for the Eleventh Circuit

---

DONALD J. TRUMP, ET AL.,
*APPELLANTS*

*v.*

HILLARY R. CLINTON, ET AL.,
*APPELLEES*

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(CASE NO. 22-CV-14102)
(THE HONORABLE DONALD M. MIDDLEBROOKS, J.)*

---

### JOINT BRIEF OF APPELLEES

---

DAVID OSCAR MARKUS
MARKUS/MOSS PLLC
 *40 NW 3rd Street, PH 1*
 *Miami, FL 33128*
 *(305) 379-6667*

DAVID E. KENDALL
KATHERINE M. TURNER
MICHAEL J. MESTITZ
JAMES N. SASSO
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue, S.W.*
 *Washington, DC 20024*
 *(202) 434-5000*

 *Counsel for Appellee
 Hillary Clinton*

 *Additional Appellees' Counsel
 listed in the signature block*

*Trump v. Clinton, et al., Nos. 22-13410, 22-14099, 23-10387, & 23-13177*

## CERTIFICATE OF INTERESTED PERSONS

Appellees file this Certificate of Interested Persons listing the parties and entities interested in this appeal, as required by 11th Circuit Rule 26.1.

ABC Corporations

Aytch Lett, Enjolique Dion

Barry, Stephen

Barzee, William R.

Berkowitz, Sean M.

Berman, Joshua Adam

Binnall, Jesse R.

Ceresney, Andrew J.

Clattenburg, Rachel

Clinton, Hillary R.

Crenny, Kevin P.

Crowley, Shawn Geovjian

Danchenko, Igor

Democratic National Committee

DNC Services Corporation

Does, John

Dolan, Jr., Charles Halliday

*Trump v. Clinton, et al., Nos. 22-13410, 22-14099, 23-10387, & 23-13177*

Doumar, George R.A.

Eisen, Allison

Elias, Marc

Erickson-Pogorzelski, Anthony

Fassbender, Diana Marie

Feldman, Maximillian

Fels, Adam Seth

Fritsch, Peter

Fusion GPS

Garcez, Isabela M.

Garza, Kathryn E.

Gillenwater, James E.

Greenberg, Gerald Edward

Habba, Alina

Habba Madaio & Associates

Harrington, Howard J.

Hart, Nancy E.

HFACC, Inc.

Howard, Eleni Kastrenakes

Hunt, Honorable Patrick

Iguina Gonzalez, Carmen

Joffe, Rodney

*Trump v. Clinton, et al., Nos. 22-13410, 22-14099, 23-10387, & 23-13177*

Kaplan, Roberta A.

Kendall, David Evan

Klauber, Debra Potter

Klugh, Richard C.

Levine, Jonathan Edward

Levy, Joshua

Lipshultz, Zachary Andrew

Madaio, Michael T.

Markus, David Oscar

Martinez, Roberto

McNichols, John Marcus

Meeks, Katherine Moran

Mestitz, Michael

Middlebrooks, Honorable Donald M.

Monsour, Jr., Franklin George

Mook, Robert E.

Neuman, Sarah E.

Neustar Security Services

Neustar, Inc.

Ohr, Bruce

Ohr, Nellie

Olmedo-Rodriguez, Jennifer

*Trump v. Clinton, et al., Nos. 22-13410, 22-14099, 23-10387, & 23-13177*

Orbis Business Intelligence, Ltd.

Otterberg, April A.

Peacock, Benjamin

Perkins Coie LLP

Pettis, Eugene K.

Pinto, Paola

Podesta, John

Reines, Philippe

Reilly, Wendy B.

Roberts, Jared Joseph

Sainvil, Akiesha Renee Gilcrist

Sasso, James N.

Sasson, Jamie Alan

Schar, Reid J.

Schultz, Deborah Wasserman

Sigler, Geoffrey M.

Simpson, Glenn

Soto, Edward

Southall, Samantha

Steele, Christopher

Stekloff, Brian L.

Sullivan, Jake

*Trump v. Clinton, et al., Nos. 22-13410, 22-14099, 23-10387, & 23-13177*

Sussmann, Michael

Terrell, Stephen R.

Ticktin Law Group

Ticktin, Peter David

Trout, Robert P.

Trump, Donald J.

Turner, Katherine M.

Tyrrell, Steven

Warin, Francis Joseph

Wylie, John W.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submit that oral argument will not assist in the resolution of this case and is unnecessary because the outcome is clearly controlled by binding precedent.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................ 1

STATEMENT OF THE ISSUES .......................................................... 2

STATEMENT OF THE CASE ............................................................. 3

STANDARD OF REVIEW ................................................................. 10

SUMMARY OF ARGUMENT ............................................................ 11

ARGUMENT ..................................................................................... 14

I.    Trump's RICO and injurious falsehood claims are time-
      barred on the face of the amended complaint. ........................... 14

    A.    The district court correctly addressed the untimeliness of
          Trump's claims on the face of the amended complaint............ 15

    B.    No novel doctrine of "presidential tolling" applies................... 17

    C.    Statutory tolling does not apply. ............................................. 22

II.   Trump failed to state any claim on which relief may be
      granted. .................................................................................... 27

    A.    The district court did not dismiss because the amended
          complaint was a "shotgun pleading." ...................................... 27

    B.    Trump failed to allege a RICO or RICO conspiracy claim........ 30

        1.    Trump failed to allege a RICO enterprise. ........................... 30

        2.    Trump failed to allege any racketeering predicate acts....... 35

        3.    Trump failed to allege a pattern of racketeering activity. ... 47

        4.    Trump failed to allege that any RICO violation caused injury
              to his business or property.................................................... 50

        5.    Trump failed to allege a RICO conspiracy............................ 53

    C.    Trump failed to allege a claim for injurious falsehood. ........... 53

    D.    Trump has waived his challenge to the dismissal of his
          claim for malicious prosecution conspiracy.............................. 56

III.  The district court appropriately sanctioned Appellants for
      their frivolous suit.................................................................... 56

A.   Appellants had ample notice of both the possibility of, and basis for, sanctions....................................................57

B.   There was no legal requirement (or need) for a hearing. .........66

C.   Appellants' pleading and repleading was in bad faith. ............70

D.   The district court properly considered Trump's other litigation conduct. ....................................................77

E.   The district court's fee award was proper. ................................79

IV.   The district court properly concluded that the Durham Report did not warrant reconsideration. .......................................80

V.   The district court correctly denied Appellants' untimely recusal motion. ....................................................82

A.   The district court had no jurisdiction to hear the recusal motion. ....................................................82

B.   Appellants' recusal motion was untimely. ...............................85

C.   Appellants' allegations of bias are meritless. ...........................86

CONCLUSION ....................................................91

## TABLE OF CITATIONS

Page

Cases:

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987) .............................................................. 23

*Akkasha v. Bloomingdales, Inc.*,
  No. 17-cv-22376, 2020 WL 6820879 (S.D. Fla. July 20, 2020) ........... 75

*Al-Rayes v. Willingham*, 914 F.3d 1302 (11th Cir. 2019) ...................... 30

*Alix v. McKinsey & Co.*, 23 F.4th 196 (2d Cir. 2022) .............................. 45

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ......... 40

*Amlong & Amlong, P.A. v. Denny's Inc.*,
  500 F.3d 1230 (11th Cir. 2007) ........................................................ 68

*Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268 (3d Cir. 1999) ....... 67

*Anza v. Ideal Steel Supply Co.*, 547 U.S. 451 (2006) .............................. 50

*Armstead v. Allstate Prop. & Cas. Ins. Co.*,
  705 F. App'x (11th Cir. 2017) (per curiam) ...................................... 59

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................. 6, 10, 40, 43, 71

*B & F Sys., Inc. v. LeBlanc*,
  519 F. App'x 537 (11th Cir. 2013) (per curiam) ................................ 22

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091 (9th Cir. 2002) ................... 70

*Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998) .......................... 70, 77

*Beck v. Prupis,* 529 U.S. 494 (2000) ................................................ 53, 76

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................ 40

*Bivens Gardens Off. Bldgs. v. Barnett Banks of Fla., Inc.*,
  140 F.3d 898 (11th Cir. 1998) ........................................................... 85

*Boyle v. United States*, 556 U.S. 938 (2009) ........................................... 30

iii

Page

Cases—continued:

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
    489 F.3d 1129 (11th Cir. 2007) ........................................... 58

*Campos v. City of Naples*,
    202 F. App'x 381 (11th Cir. 2006) (per curiam) ................................. 69

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ........................... 65, 66, 68

*Ciminelli v. United States*, 598 U.S. 306 (2023) ............................... 39, 44

*Cisneros v. Petland, Inc.*, 972 F.3d 1204 (11th Cir. 2020) ......... 30, 35, 39

*Clinton v. Jones*, 520 U.S. 681 (1997) ..................................................... 19

*Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    945 F.3d 1150 (11th Cir. 2019) ........................................... 40

*Ctr. for Immigr. Stud. v. Cohen*,
    410 F. Supp. 3d 183 (D.D.C. 2019),
    *aff'd*, 806 F. App'x 7 (D.C. Cir. 2020) (per curiam) ........................... 44

*Daedalus Cap. LLC v. Vinecombe*,
    625 F. App'x 973 (11th Cir. 2015) ........................................... 49

*Dean v. Colvin*, 585 F. App'x 904 (7th Cir. 2014) ................................. 78

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) (en banc) .. 58, 64, 67

*Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*,
    561 F.3d 1298 (11th Cir. 2009) ........................................... 68

*Falic v. Legg Mason Wood Walker, Inc.*,
    347 F. Supp. 2d 1260 (S.D. Fla. 2004) ......................................... 53, 54

Page

Cases—continued:

*Ferrell v. Durbin,*
  311 F. App'x 253 (11th Cir. 2009) (per curiam) ........................... 47, 50

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978) ....................... 31

*Flanigan's Enters., Inc. v. Fulton County,*
  242 F.3d 976 (11th Cir. 2001) (per curiam)...................................... 17

*Gray v. Lockheed Aeronautical Sys.,*
  125 F.3d 1387 (11th Cir. 1997)........................................................ 79

*Griggs v. Provident Consumer Disc. Co.,*
  459 U.S. 56 (1982) (per curiam)...................................................... 83

*Gwynn v. Walker (In re Walker),*
  532 F.3d 1304 (11th Cir. 2008) (per curiam).................................... 10

*H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229 (1989)................................ 47

*Hagan v. Comm'r, Ga. Dep't of Corr.,*
  No. 22-12180, 2023 WL 5621895
  (11th Cir. Aug. 31, 2023) (per curiam) ............................................ 28

*Hamm v. Members of Bd. of Regents*, 708 F.2d 647 (11th Cir. 1983).... 87

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.,*
  187 F.3d 941 (8th Cir. 1999)............................................................ 44

*Hemi Grp. v. City of New York,* 559 U.S. 1 (2010)........................... 50, 52

*Hepburn v. Moore*, 215 F.3d 1208 (11th Cir. 2000) (per curiam) .......... 15

Page

Cases—continued:

*Hill v. Morehouse Med. Assocs., Inc.*,
  No. 02-14429, 2003 WL 22019936
  (11th Cir. Aug. 15, 2003) (per curiam) .............................................. 42

*Honig v. Kornfeld*, 339 F. Supp. 3d 1323 (S.D. Fla. 2018) .................... 56

*In re Evergreen Sec., Ltd.*, 570 F.3d 1257 (11th Cir. 2009) ................... 70

*In re Moody*, 755 F.3d 891 (11th Cir. 2014) (per curiam)...................... 90

*In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) .................................... *passim*

*In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291 (11th Cir. 2006)............ 67

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) ....................................... 24

*Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990)............................... 18

*Jackson v. Bank of America, N.A.*
  898 F.3d 1348 (11th Cir. 2018) .................................................. *passim*

*Jackson v. BellSouth Telecomms*,
  372 F.3d 1250 (11th Cir. 2004)....................................... 33, 47, 48, 49

*Jallali v. U.S. Funds*, 573 F. App'x 915 (11th Cir. 2014)..... 85, 87, 88, 89

*Johnson v. 27th Avenue Caraf*,
  9 F.4th 1300 (11th Cir. 2021) .................................................... *passim*

*Kanarick v. GE Credit Retail Bank Care Credit*,
  No. 13-cv-80039, 2013 WL 12092479 (S.D. Fla. Sept. 6, 2013) ......... 54

*Kelly v. United States*, 590 U.S. 391 (2020) ................................. 43, 45, 46

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ..................................... 23

vi

Page

Cases—continued:

*La Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004) ....... 14

*Leh v. Gen. Petroleum Corp.*, 382 U.S. 54 (1965) .................................... 25

*Lewis v. Lhu*, 696 F. Supp. 723 (D.D.C. 1988) ........................................ 44

*Liteky v. United States*, 510 U.S. 540 (1994) .............................. 86, 87, 88

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) .................. 41

*Menominee Indian Tribe v. United States*,
    577 U.S. 250 (2016) ...................................................................... 18, 21

*Miccosukee Tribe of Indians v. Cypress*,
    814 F.3d 1202 (11th Cir. 2015) ......................................................... 39

*Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*,
    18 F.3d 260 (4th Cir. 1994) ............................................................... 45

*Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*,
    381 U.S. 311 (1965) ........................................................................... 25

*Newbauer v. Carnival Corp.*, 26 F.4th 931 (11th Cir. 2022) ................. 10

*Nezbeda v. Liberty Mut. Ins. Corp.*,
    789 F. App'x 180 (11th Cir. 2019) (per curiam) ................................ 28

*NPF Franchising, LLC v. SY Dawgs, LLC*,
    37 F.4th 369 (6th Cir. 2022) ............................................................. 67

*O'Neal v. Allstate Indem. Ins. Co.*,
    No. 20-14712, 2021 WL 4852222
    (11th Cir. Oct. 19, 2021) (per curiam) ......................................... 77, 78

Page

Cases—continued:

*O'Rourke v. Dominion Voting Sys., Inc.*,
  No. 21-1442, 2022 WL 17588344
  (10th Cir. Dec. 13, 2022) (per curiam)................................................67

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
  210 F.3d 1112 (9th Cir. 2000)............................................................68

*Paladin Assocs., Inc. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003)............................................................65

*Parm v. Nat'l Bank of Calif., N.A.*,
  242 F. Supp. 3d 1321 (N.D. Ga. 2017)...............................................53

*Pension Fund Mid Jersey Trucking Indus. v. Omni Funding Grp.*,
  687 F. Supp. 962 (D.N.J. 1988)..........................................................26

*Procter & Gamble Co. v. Amway Corp.*,
  242 F.3d 539 (5th Cir. 2001)..............................................................46

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
  851 F.3d 1218 (11th Cir. 2017)..........................................................70

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) ..................................................44

*Ray v. Spirit Airlines*, 836 F.3d 1340 (11th Cir. 2016)...........................30

*Reynolds v. Roberts*, 207 F.3d 1288 (11th Cir. 2000).............................68

*Riddle v. Egensperger*, 266 F.3d 542 (6th Cir. 2001).............................80

*Roper v. Sec'y, Fla. Dep't of Corr.*,
  686 F. App'x 759 (11th Cir. 2017) (per curiam) .................................21

Page

Cases—continued:

*Sapuppo v. Allstate Floridian Ins. Co.*,
739 F.3d 678 (11th Cir. 2014) ...................................................... 49, 55

*Sciarretta v. Lincoln Nat'l Life Ins. Co.*,
778 F.3d 1205 (11th Cir. 2015) ..................................................... 11, 70

*Showtime/The Movie Channel, Inc. v. Covered Bridge Condo.
Ass'n, Inc.*, 895 F.2d 711 (11th. Cir. 1990) ......................................... 84

*Simpson v. Sanderson Farms, Inc.*,
744 F.3d 702 (11th Cir. 2014) ...................................................... 50, 51

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
534 F. Supp. 2d 1326 (S.D. Fla. 2008) .................................................. 53

*Taylor v. Haynes Burns*,
No. 13-cv-15, 2013 WL 12329822 (D.N.M. July 26, 2013) ................ 84

*Tejero v. Portfolio Recovery Assocs., L.L.C.*,
955 F.3d 453 (5th Cir. 2020) ............................................................ 79

*Thomas v. Tenneco Packaging Co.*,
293 F.3d 1306 (11th Cir. 2002) (per curiam) .................................... 71

*Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307 (11th Cir. 2000) ........ 10

*Trump v. Comm. on Ways & Means*,
391 F. Supp. 3d 93 (D.D.C. 2019) ...................................................... 20

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) ................................. 20

*Trump v. United States*, 54 F.4th 689 (11th Cir. 2022) (per curiam) .... 19

*Trump v. Vance*, 140 S. Ct. 2412 (2020) .............................................. 20

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) .................................. 56

Page

Cases—continued:

*United States v. Amri,*
   No. 1:17-cr-50, 2017 WL 3262254 (E.D. Va. July 31, 2017),
   *aff'd*, 738 F. App'x 794 (4th Cir. 2018) ............................................... 35

*United States v. Bailey*, 175 F.3d 966 (11th Cir. 1999) ........................... 87

*United States v. Carey*, 929 F.3d 1092 (9th Cir. 2019) .................... 78, 90

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993) ............................. 84

*United States v. Fonseca-Machado*, 53 F.3d 1242 (11th Cir. 1995) ....... 15

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (en banc) ....... 11

*United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994) ........................... 33

*United States v. Mendoza*, 468 F.3d 1256 (10th Cir. 2006) ................... 79

*United States v. Moran*, 778 F.3d 942 (11th Cir. 2015) ................... 55, 56

*United States v. Perkins*, 787 F.3d 1329 (11th Cir. 2015) ............... 88, 89

*United States v. Ronda*, 455 F.3d 1273 (11th Cir. 2006) ....................... 36

*United States v. Ronga*, 682 F. App'x 849 (11th Cir. 2017) ................... 36

*United States v. Turkette*, 452 U.S. 576 (1981) ..................................... 32

*United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998) ........................... 36

*United States v. Wheeler,*
   16 F.4th 805 (11th Cir. 2021) (per curiam) ....................................... 43

*United States v. Williams,*
   571 F. App'x 887 (11th Cir. 2014) (per curiam) ................................. 36

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018) ............. 28

Page

Cases—continued:

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) (en banc) ..................................... 18, 21

*Wallace v. Kato*, 549 U.S. 384 (2007) ...................................................... 18

*XTec, Inc. v. Hembree Consulting Servs., Inc.*,
    No. 14-cv-21029, 2014 WL 12729173 (S.D. Fla. Aug. 1, 2014) .......... 54

*Zenith Radio Corp. v. Hazeltine Rsch. Inc.*, 401 U.S. 321 (1971) ........... 25

## CONSTITUTION, STATUTES, AND RULES

U.S. Const., amend. I ...................................................................... *passim*

15 U.S.C. § 16(i) ............................................................................... 22, 23

18 U.S.C.
    § 1001 .......................................................................................... 36
    § 1343 ............................................................................. 35, 43, 53
    § 1512(b)(3) ........................................................................ *passim*
    § 1512(c) ..................................................................................... 39
    §§ 1961–1968 ........................................................................... 23
    § 1961(1) .................................................................................... 76
    § 1962(c) .................................................................................... 30
    § 1962(d) .................................................................................... 53
    § 1964(c) ................................................................... 44, 50, 51

28 U.S.C.
    § 455 ................................................................... 83, 85, 87, 90
    § 1927 ................................................................... 62, 66, 68

Page

Constitution, Statutes, and Rules—continued:

Fed. R. Civ. P.
    8...................................................................................... 43, 71
    9(b).................................................................... 39, 40, 42, 43
    11 .......................................................................... *passim*
    12(b)(6) ................................................................... 10
    60(b)........................................................................ *passim*
    62.1 ........................................................................... 8

Fed. R. Evid. 201(b) ............................................................. 33

11th Cir. R. 12.1-1 .............................................................. 84

S.D. Fla. Loc. R. 7.1(b)(2) ..................................................... 67

## OTHER AUTHORITY

H. 19215, 91st Cong., 2d Sess. (1970) .................................... 24

Mot. for Jud. Notice, *Gianelli v. Schoenfield*,
    No. 2:21-cv-477 (E.D. Cal. Apr. 15, 2021),
    DE:16.......................................................................... 26

Complaint, *Pres. Petrified Forest Land Invs. LLC v. Renzi*,
    No. 12-cv-8140 (D. Ariz. July 12, 2012)............................... 26

# INTRODUCTION

This is, at its heart, a straightforward appeal warranting a straightforward affirmance under well-settled and binding law. Set aside the names Trump and Clinton in the caption: a plaintiff and his counsel filed a frivolous suit that failed on several independent bases as a matter of law. They were alerted to the many deficiencies by several defendants and sought leave to replead to fix the problems. Instead, they propounded an amended complaint with the legal defects and factual misstatements unchanged. The district court dismissed the suit and, after exhaustive briefing, imposed sanctions on multiple grounds. While on appeal, plaintiff filed motions to disqualify the district judge and to ask the court to reconsider its previous rulings. The district court again relied on settled law and sound logic in rejecting both motions.

Now, plaintiff and his counsel do not even dispute dismissal of *ten of the sixteen causes of action*. They attempt to salvage the remaining claims with several arguments not raised below, or several arguments so cursory they amount to waiver. The cases they cite are often inapposite or directly contrary to their position. And, just as below, several of their arguments are foreclosed by binding precedents.

1

No plaintiff, whoever he may be, is entitled to reversal under these circumstances. The judgments of the district court should accordingly be affirmed.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly dismissed the amended complaint because its claims were untimely on their face.

2.    Whether the district court correctly dismissed the amended complaint because its claims failed on multiple independent grounds, including because they were barred by binding precedent and failed adequately to allege several elements.

3.    Whether the district court abused its discretion in imposing sanctions on plaintiff and his counsel or clearly erred in finding bad faith, when the amended complaint was an improper shotgun pleading that contained knowingly or recklessly false allegations and frivolous legal theories foreclosed by precedent, and plaintiff's repeated conduct showed a pattern of abusing the judicial system.

4.    Whether the district court acted within its discretion in concluding that the Durham Report did not warrant reconsideration of the dismissal and sanctions orders under Federal Rule of Civil Procedure

60(b), because the Report was not "newly discovered evidence" and did nothing to cure the numerous deficiencies in the amended complaint.

5.    Whether the district court acted within its discretion in denying plaintiff's untimely and groundless motion to recuse, when plaintiff delayed filing until well after the alleged basis for recusal arose, failed to seek leave from this Court to file that motion while this appeal was pending, and identified nothing warranting recusal under this Court's or the Supreme Court's precedents.

## STATEMENT OF THE CASE

1.    In the district court, plaintiff Donald Trump filed a 108-page, scattershot complaint alleging that Hillary Clinton and 27 other defendants "orchestrated a malicious conspiracy to disseminate patently false and injurious information about Donald J. Trump and his campaign, all in the hopes of destroying his life, his political career and rigging the 2016 Presidential Election in favor of Hillary Clinton." DE:1:¶9.[1]  He asserted 16 causes of action for violations of the Racketeer

---

[1] For consistency, Appellees adopt the same citation style as Appellants. In addition, because this appeal includes appeals of both the dismissal order (to which Trump is the sole Appellant) and the sanctions order (which includes his counsel as parties), this brief refers to "Trump" as the

Influenced and Corrupt Organizations Act ("RICO"), the Computer Fraud and Abuse Act, the Stored Communications Act, and the federal trade secrets statute; for the torts of injurious falsehood, malicious prosecution, and related conspiracies; and for "agency" or "respondeat superior." *See* DE:1.

Appellees filed 15 separate motions to dismiss that alerted Trump and his attorneys to the glaring deficiencies in the complaint. *See infra*, pp. 59-63. Trump waited to amend his complaint until every defendant then served had moved to dismiss, asserting that a single amendment "would allow the Plaintiff an opportunity to cure the deficiencies raised in those motions." DE:66:2-3.

Far from addressing these defects, the amended complaint grew to "193 pages in length, with 819 numbered paragraphs," and 31 named defendants. DE:267:4. Despite ample briefing on the initial complaint's shortcomings, the amended complaint "added eighty new pages of largely irrelevant allegations that did nothing to salvage the legal sufficiency of his claims." DE:267:63-64.

---

party to the merits issues and uses "Appellants" to refer to both Trump and his counsel.

The defendants again moved to dismiss, and the district court issued a thorough, 65-page opinion dismissing all claims.  DE:267.  The court concluded that many of the claims were "not warranted under existing law," and, in fact, were "foreclosed by existing precedent, including decisions of the Supreme Court." DE:267:4.  It held that each claim suffered from multiple fatal defects, each of which warranted dismissal.  For example, Trump's RICO-based claims "fail[ed] at the merits at every step of the analysis," DE:267:30; his injurious falsehood allegations "f[e]ll far short of stating a claim" as to multiple elements, DE:267:48; and his malicious prosecution and related conspiracy claims failed because "he was never prosecuted," DE:267:50.  Moreover, the district court found that dismissal was appropriate because many of Trump's claims were time-barred on the face of the amended complaint. DE:267:23.

Trump's factual allegations were also deficient.  The amended complaint was simultaneously swollen with irrelevant facts and lacking in "any specific factual allegations which might provide factual support for the conclusions reached." DE:267:5.  Its allegations, unsupported by well-pleaded facts, bore a "striking[]" resemblance "to the conclusory and

formulaic allegations found deficient in the seminal Supreme Court case of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." DE:267:5. Worse still, Trump had incorporated multiple public documents into his complaint by reference while mispresenting their conclusions. DE:267:5.

The district court also identified defects specific to particular defendants. As to three Appellees—Orbis, Dolan, and Joffe—Trump's allegations were wholly inadequate to demonstrate personal jurisdiction. DE:267:14-22. And as to James Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Adam Schiff, and Rod Rosenstein—all of whom were defendants represented below by the federal government—the court concluded that the alleged wrongdoing plainly related to their official acts. DE:267:10-14. The court therefore dismissed those defendants—a ruling Trump has not challenged on appeal.

2.    Because, even after the opportunity to amend, the amended complaint was unwarranted on the facts, unsupported by the law, and served no purpose other than to impose additional burden on the defendants, 19 of the defendants below moved for sanctions: one under Rule 11, DE:269, and the others under the district court's inherent

authority, among other bases, DE:280.[2]  Trump and his attorneys filed objections to the sanctions, but declined to submit affidavits or other evidence.  DE:285.

After full briefing, the district court granted the Rule 11 sanctions in a 19-page opinion, DE:284, and the inherent-power sanctions in a 46-page opinion.  DE:302.  In the latter, the court relied on multiple independent grounds, including that the amended complaint was a shotgun pleading, that it contained allegations that were knowingly or recklessly false, that the legal theories were frivolous and foreclosed by clear precedent, and that Trump's repeated conduct showed a pattern of abuse of the courts.

Although Trump and his counsel offered no objection to $621,043 of Appellees' requested fees, and the objections they did submit were largely "indecipherable" and inadequate, DE:302:35, the district court carefully considered the objections and evaluated, *sua sponte*, certain other aspects of the appropriateness of the requested fees, DE:302:36-45.  It ultimately

---

[2] Appellees address all merits and sanctions issues in this consolidated brief for the Court's and the parties' convenience.  Perkins Coie LLP, Elias, Sussmann, and Sullivan did not seek sanctions below and do not join the sanctions-related portions of this consolidated brief.

awarded less than Appellees sought—which was itself substantially less than what they incurred as a result of this suit.

3.     Trump and his counsel appealed.    While the appeal was pending, they obtained a stay from this Court so they could ask the district court for an indicative ruling under Federal Rule 62.1 on whether the district court would reconsider its orders in light of the subsequently issued report from Special Counsel John Durham.  DE:331.  Although the Durham Report itself was new, its contents were not.  The Report repeated allegations the Special Counsel long ago made public in its speaking indictments of Appellees Michael Sussmann and Igor Danchenko, both of whom were acquitted by unanimous juries in 2022. Although Trump's amended complaint had already drawn heavily from these indictments—which he alleged "exposed" the "full extent of the Defendants' conspiracy," DE:177:¶8—Trump and his counsel claimed in their motion that the Durham Report "seismically alters the legal landscape of this case," DE 331:1.

The district court rejected this assertion and explained in detail why the Durham Report had no effect on its prior rulings, including that the new document "d[id not] affect the many *legal* conclusions set forth

in the MTD Order" and did not contain any "newly-discovered" evidence. DE:343:5, 9.[3]  The district court further explained that the Report did nothing to address the various bases for sanctions, including Trump's and his counsel's "factual misrepresentations and exaggerations," "frivolous legal theories foreclosed by existing precedent," and "pattern of misusing the courts," none of which the Durham Report could "retroactively cure." DE:343:14, 16.

4.    Without seeking this Court's leave, Trump and his counsel also filed a motion to disqualify the district judge.  The motion rehashed arguments that Trump had made at the outset of the case in a previous motion to disqualify, which the district court denied and Trump failed to appeal.  DE:30.  The motion also accused the district judge of bias based on the content of his opinion dismissing the amended complaint—even though Trump and his counsel failed to seek recusal after that order was issued and before the same judge adjudicated the sanctions motions.  The district court concluded that it lacked jurisdiction over the motion because Trump and his counsel had not sought permission from this

---

[3] Unless otherwise noted, all internal quotation marks, alterations, and citations are omitted and all emphases are added.

Court to file it and, in the alternative, noted that this Court's and the Supreme Court's precedent confirmed that recusal was neither necessary nor appropriate.  DE:342.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's order granting the motion to dismiss under Federal Rule 12(b)(6).  *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will "naked assertions devoid of further factual enhancement."  *Id.*

This Court reviews the district court's orders imposing sanctions, denying the indicative Rule 60(b) motion, and denying the motion for recusal for abuse of discretion.  *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1308 (11th Cir. 2008) (per curiam); *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000).  "The application of an abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach."  *United States v. Frazier*, 387 F.3d 1244, 1259 (11th

Cir. 2004) (en banc).  The Court must affirm unless "the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.*

The Court reviews the district court's finding of bad faith, and the subsidiary factual findings that go into it, "only for clear error," and will reverse "only if after viewing all the evidence, [it is] left with the definite and firm conviction that a mistake has been committed."  *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1213 (11th Cir. 2015).

## SUMMARY OF ARGUMENT

I.    The district court correctly ruled that Trump's RICO and injurious falsehood claims were untimely on the face of the amended complaint.  Trump's own allegations confirmed he was on notice of his claims no later than October 2017, meaning that his claims were time-barred when he filed his initial complaint on March 24, 2022.  Trump does not dispute this conclusion on appeal.  Instead, he argues that two novel theories save his claims.  First, he contends that he is entitled to equitable tolling during his entire presidency.  Second, he contends that he is entitled to statutory tolling under a Clayton Act provision that no

appellate court has applied to the RICO statute.  Neither contention is sustainable.

II.   As the district court correctly concluded, the amended complaint also failed to state any claim on the merits.   Trump's scattershot complaint was replete with the types of conclusory and unsupported allegations that do not adequately plead any claims and which, in any event, failed adequately to plead almost every necessary element of his causes of action.  Moreover, his legal theories suffered from clear and irremediable defects under binding law.  This constellation of problems provided ample alternative bases for the district court's dismissal, including the dismissal of the six claims (out of sixteen) that Trump has appealed.

III.   The district court did not abuse its discretion in imposing sanctions on Trump and his counsel for—among other things—pursuing facially defective and foreclosed legal claims, misrepresenting the documents incorporated in the complaint and amended complaint, and bringing this suit for an improper purpose, nor did it clearly err in finding bad faith.  Trump and his counsel were required to bring suit only in good faith and with short, plain, and factually and legally supported claims.

They did not.  Moreover, Appellees' initial round of motion-to-dismiss briefing alerted Appellants to the defects in their allegations and legal theories, and should have prompted further investigation, or a different course, in the amended complaint.  Appellants did not address those defects, instead compounding some and simply ignoring others in the face of binding precedent.  When certain Appellees moved for sanctions, Appellants had a full and fair opportunity to brief the issue and to object to both the entitlement to sanctions and the amount of fees sought.  And the district court carefully and correctly applied this Court's precedents governing the imposition of sanctions, including by looking to related litigation conduct in determining that Appellants' behavior demonstrated a pattern of bad-faith litigation tactics.

IV.    The district court did not abuse its discretion in denying, in an indicative ruling, Appellants' request under Rule 60(b) for it to reconsider its dismissal and sanctions orders based on the Durham Report.  Appellants failed to identify below—and fail to identify on appeal—any aspect of the Durham Report that would warrant a different result, and argue instead that the Durham Report supposedly corroborates the allegations already contained in the amended

complaint. But the Durham Report does not justify a different result, and is not capable of retroactively curing the many legal and pleading deficiencies that warranted dismissal and sanctions here.

V.     The district court did not abuse its discretion in denying the motion for recusal. It correctly concluded that it lacked jurisdiction over the motion, which was filed without the leave of this Court while this appeal was pending. Moreover, and in the alternative, the district court correctly determined that no authority either required or supported Appellants' baseless request for recusal on these facts. And, moreover, the motion could have been independently denied because Appellants failed to seek recusal after the issuance of the dismissal order allegedly placed them on notice of the supposed bias, and instead lay in wait while the same district court adjudicated the motions for sanctions.

## ARGUMENT

## I.     Trump's RICO and injurious falsehood claims are time-barred on the face of the amended complaint.

"[D]ismissal on statute of limitations grounds is appropriate … if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004). In such circumstances, there is no "question of fact" to resolve, and the

14

application of any tolling is "a question of law." *Hepburn v. Moore*, 215 F.3d 1208, 1209 (11th Cir. 2000) (per curiam).[4]

Trump's own allegations confirm that his claims expired long before he filed his suit—something he does not dispute on appeal. He instead argues only that two unrecognized tolling theories—a "presidential tolling" doctrine never adopted by any court, and a statutory tolling doctrine inapplicable based on the text of the statute—rescue his time-barred claims. The district court correctly rejected these novel and unsupported assertions.

### A. The district court correctly addressed the untimeliness of Trump's claims on the face of the amended complaint.

Trump argues (at 43) that "the limitations issues could not be fairly determined from the face of the amended complaint" and that the district court "wrongfully denied" him "the opportunity to prove facts showing" his claims were timely. To the contrary, as the district court carefully explained, Trump's own pleadings demonstrated that he knew of the

---

[4] Trump (at 42) cites *United States v. Fonseca-Machado*, for the proposition that tolling is a question of fact. But in that criminal appeal, whether the defendant was a "fugitive" sufficient to invoke tolling was a fact genuinely in dispute. 53 F.3d 1242, 1243 (11th Cir. 1995) (per curiam). The case is irrelevant.

conduct underlying his RICO claims no later than October 2017. That meant that, at best, the four-year statute of limitations ran as of October 2021, and had expired by the time Trump brought this action on March 24, 2022. The same is true of his injurious falsehood claims: the statements underlying almost all of those claims occurred before 2020, so were untimely under the two-year statute of limitations.

As the district court observed, the acts that the complaint alleges are RICO predicates—"the creation and circulation of the Steele Dossier and initiation of the Crossfire Hurricane Investigation (obstruction of justice) … and false statements to law enforcement and the media (wire fraud)"—took place in the summer and fall of 2016. DE:267:26. The amended complaint further alleges that "numerous prominent media outlets ran stories on the theory underlying Plaintiff's claims as early as 2016, which were shared by his political opponent in the 2016 presidential election." DE:267:26. Thus, the amended complaint's "allegations compel only one logical conclusion: that Plaintiff was aware of the factual basis underlying his RICO claims since at least October 2017, if not earlier." DE:267:26. Accordingly, his RICO claims expired in October 2021, five months before he filed suit. Trump did not

"meaningfully dispute" in the district court that "he knew of his claims since that time."  DE:267:26.  Nor has he done so on appeal.

Similarly, as to the injurious falsehood claim, almost all of the statements Trump alleged as a basis for his claims occurred—and were publicized—in 2016 and 2017, so the two-year statute of limitations for injurious falsehood had long since expired by the time he filed suit in March 2022.[5]

In this Court, Trump does not (at 42-43) attempt to explain why the district court's analysis on accrual was incorrect, nor identify any facts subject to discovery that would render his claims timely.  He has therefore waived any arguments to that effect.  *See Flanigan's Enters., Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (per curiam).

## B.    No novel doctrine of "presidential tolling" applies.

Without disputing that his claims are time-barred on their face, Trump argues (at 44-45) that he is entitled to equitable tolling because,

---

[5] As the district court correctly determined, the few alleged statements that were within the statute of limitations failed to state a claim on the merits.  DE:267:45-49; *see infra*, pp. 53-56.

as President from January 20, 2017 to January 20, 2021, he faced "historically-unprecedented circumstances" such that "[h]e could not, and should not, have been burdened" with the "obligation" of filing this suit. But the law affords presidents no exceptional treatment in this regard. Like every other litigant, Trump cannot be excused from his uncontested failure to pursue his rights within the limitations period.

Equitable tolling is a "rare remedy," *Wallace v. Kato*, 549 U.S. 384, 396 (2007), and "[f]ederal courts have typically extended equitable relief only sparingly," *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *see also Menominee Indian Tribe v. United States*, 577 U.S. 250, 255-57 (2016) (requiring extraordinary circumstances beyond the litigant's control).

Trump's argument for tolling is based on his contention (at 45) that the "President occupies a unique position in the constitutional scheme." But this Court has already rejected any "special" tolling test based on the identity of "particular litigants." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc). A president is no different. Adhering to the statutory limitations period ensures the "evenhanded administration of the law," *id.*, and it is with good reason that this Court

18

refused, in another circumstance, to "carve out an unprecedented exception in our law for former presidents," *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (per curiam). It should again refuse to do so here.

In *Clinton v. Jones*, the Supreme Court *rejected* a stay of civil litigation during President Clinton's term, observing that Congress could change that default rule by providing protections to a sitting President, including "tolling or [a] stay of civil claims." 520 U.S. 681, 708-10 (1997). But in the nearly three decades since, Congress has not done so. The district court therefore correctly concluded that Trump "is unable to support" his novel presidential tolling claim "with any relevant legal authority." DE:267:27.

As the district court also correctly observed, Trump's claim that he could not pursue civil litigation from the White House is contradicted by his own conduct in office, when the demands of the presidency "evidently did not deter him from pursuing other lawsuits in his personal capacity." DE:267:27 (citing *Trump v. Vance*, 140 S. Ct. 2412 (2020); *Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020); *Trump v. Comm. on Ways & Means*, 391 F. Supp. 3d 93 (D.D.C. 2019)). Trump asserts (at 46) that

these other lawsuits "were filed to vindicate significant governmental and constitutional interests arising from the Presidential role."  But he does not dispute that each was filed in his personal capacity, nor can he dispute that each aimed to advance his personal interests in businesses, documents, or tax returns.  *See Vance*, 140 S. Ct. at 2420 (suit brought by "[t]he President, acting in his personal capacity," to enjoin enforcement of a subpoena seeking tax and financial records for his personal businesses); *Mazars*, 591 U.S. at 856 (same); *Comm. on Ways & Means*, 391 F. Supp. 3d at 95-96 (attempting to prevent congressional use of the Trust Act to access Trump's personal New York tax returns).  Like those suits, this litigation seeks "to advance [Trump's] personal interests."  Br. 47.  It is hard to understand how the "potential for constitutional confusion" was an "exceptional circumstance" that prevented Trump from filing this suit, but not others, within the prescribed limitations period.  Br. 48.

Second, equitable tolling is also unavailable to Trump because, although equitable tolling might be available when there is some "external obstacle to timely filing," *Menominee*, 577 U.S. at 256-57, this rare legal theory is "not available when a litigant was responsible for [his]

own delay," *Roper v. Sec'y, Fla. Dep't of Corr.*, 686 F. App'x 759, 763 (11th Cir. 2017) (per curiam).  Thus, to the extent Trump contends (at 48-50) that he *voluntarily* delayed investigating and filing this suit to avoid the appearance of impropriety, he is not entitled to tolling here.  *See Menominee*, 577 U.S. at 256-57; *Roper*, 686 F. App'x at 763.

Had Trump truly been concerned with conflicts of interest that purportedly prevented him from pursuing this case, he could have filed suit to preserve his rights and then requested a stay.  Instead, he tweeted vociferously about the same investigations at issue in this lawsuit, DE:267:23n.5, while sitting on his rights to file suit.  Trump's tweets, as well as the allegations in his amended complaint, confirm that he knew of the conduct underlying these claims well within the statutory period, but failed diligently to pursue them.  *See Villarreal*, 839 F.3d at 971 ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."); DE:267:23-27 (citing to

21

portions of amended complaint confirming actual knowledge of the claims by October 2017).[6]

In sum, without any factual or legal support for his novel theory of presidential tolling, Trump cannot rely on equitable tolling to save his untimely claims.

### C.    Statutory tolling does not apply.

Trump also argues (at 50-57) that his RICO claims—and only his RICO claims—were tolled by the Clayton Act's special tolling provision at 15 U.S.C. § 16(i).  He provides no support for his argument that Congress intended the RICO statute to import this tolling provision, nor would the provision apply on its face.  In any event, the district court found it did not need to resolve that question because, even if the tolling provision were imported into RICO, the United States never instituted any parallel RICO proceeding that would toll Trump's RICO claims. DE:267:27-28.

---

[6] Trump asserts in passing (at 48) that discovery was necessary on equitable tolling, but does not explain what relevant facts discovery could have uncovered.  He has therefore waived this undeveloped argument. *B & F Sys., Inc. v. LeBlanc*, 519 F. App'x 537, 540 (11th Cir. 2013) (per curiam).

RICO claims are subject to the same "4-year statute of limitations for Clayton Act actions." *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  But neither Congress nor the Supreme Court incorporated into RICO the Clayton Act's special tolling provision, which is triggered when the United States "institute[s]" any "civil or criminal proceeding ... to prevent, restrain, or punish *violations of any of the antitrust laws*."  15 U.S.C. § 16(i).  Indeed, as the Supreme Court cautioned, the Clayton Act's general four-year statute of limitations "does not necessarily provide all the answers" for applying RICO's statute of limitations.  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 193 (1997).  And the RICO statute itself contains no comparable tolling provision.  18 U.S.C. §§ 1961-1968.

On its face, the Clayton Act's special tolling provision applies only when the government initiates proceedings to prevent "*violations of any of the antitrust laws*."  15 U.S.C. § 16(i).  What Trump wants here is for this Court both to incorporate the Clayton Act's tolling provision into RICO *and* revise it to apply whenever there is a parallel proceeding to "prevent, restrain, or punish violations of any of the *racketeering laws*."  In fact, Congress considered, but declined to adopt, a provision that

23

would have tolled civil RICO claims when the United States brought suit to "prevent, restrain, or punish any violation of [the RICO statute]." H. 19215, 91st Cong., 2d Sess. (1970). Judicially enacting that language would violate the fundamental rule that "Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987).

Even had Congress enacted its discarded tolling provision, it would make no difference in this case. As the district court correctly noted, "the Government has not instituted any proceedings to punish a RICO violation, nor any RICO predicate act relating to the circumstances giving rise to this litigation." DE:267:28.[7] So even if the Clayton Act's tolling provision were imported into the RICO statute, *and* the provision were judicially rewritten, statutory tolling *still* would not apply.

Trump is left instead to argue (at 51-52) that the government actions on which he relies were "based on a theory similar to the RICO action," and that he need show only that those suits "bear a real relation"

---

[7] As the district court correctly observed, and as Trump does not dispute, the FEC investigation and the indictments of Sussmann, Clinesmith, and Danchenko did not involve RICO or "any RICO predicate act relating to the circumstances giving rise to this litigation." DE:267:28.

to his claims.  But the cases he cites make clear the "real relation" test applies only if the related government suit was a proceeding already falling within the statutory text—in the Clayton Act's case, a suit to enforce antitrust laws.  *See Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59-65 (1965) (tolling statute of limitations where private antitrust complaint focused on almost identical parties and behavior as government's Sherman Act case); *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 323 (1965) (same, but involving FTC antitrust enforcement); *Zenith Radio Corp. v. Hazeltine Rsch. Inc.*, 401 U.S. 321, 323, 333-36 (1971) (tolling statute of limitations where plaintiff's antitrust complaint mirrored a government antitrust lawsuit that involved, but did not target, defendant).

Trump's position would therefore require this Court to (1) import a tolling provision into the RICO statute that Congress declined to enact, (2) rewrite the imported provision, and then (3) misapply the invented law.  Trump suggests that "several courts" have taken this approach, pointing (at 50-51) to three inapposite district court cases from RICO's 54-year history.  But as Appellees observed below, these scattered cases only undermine Trump's position.  DE:250:4.  Each involved a parallel

government suit to prosecute a RICO predicate act.  *See* Mot. for Jud. Notice, *Gianelli v. Schoenfield*, No. 2:21-cv-477 (E.D. Cal. Apr. 15, 2021), DE:16 (parallel government charges of money laundering and conspiracy to commit wire fraud); Compl. ¶¶ 207-10, *Pres. Petrified Forest Land Invs. LLC v. Renzi*, No. 12-cv-8140 (D. Ariz July 12, 2012), DE:1 (parallel government indictment for money laundering, wire fraud, extortion, and racketeering); *Pension Fund Mid Jersey Trucking Indus. v. Omni Funding Grp.*, 687 F. Supp. 962, 963 (D.N.J. 1988) (referring to "parallel criminal litigation").  And, as noted, none of the proceedings upon which Trump relies constitutes a parallel RICO action or an action instituted based on a RICO predicate act.

The text, history, and case law preclude Trump's attempt to evade the natural consequences of his failure to timely pursue his claims.  Good sense does, too:  given the number of RICO predicates and the types of proceedings that could encompass them, his proposed rule would effectively render the limitations period for RICO claims so expansive as to be meaningless.  Trump's argument for statutory tolling should be rejected.

## II.   Trump failed to state any claim on which relief may be granted.

### A.   The district court did not dismiss because the amended complaint was a "shotgun pleading."

Trump begins his argument for reversal (at 10-17) on a false premise:  that the district court dismissed "under the shotgun pleading doctrine."  On the contrary, the district court spent only two pages of its order explaining why the amended complaint was "a quintessential shotgun pleading" before "sett[ing] out to evaluate the substantive validity of Plaintiff's claims."  DE:267:7.  The remaining *63* pages of the dismissal order make the actual bases for dismissal clear—including the 40-page analysis entitled "Failure to State a Claim," which catalogues the many substantive deficiencies in the amended complaint.  DE:267:22-63.

The district court also considered whether to grant Trump leave to amend a second time.  DE:267:63-64n.22.  It concluded that amendment would be futile, because of the "fatal substantive defects that preclude Plaintiff from proceeding under any of the theories he has presented," observing that Trump "was unable to cure his Complaint even with all its shortcomings clearly laid out for him."  DE:267:64.  Moreover, Trump's claims "are not only unsupported by any legal authority but plainly

27

foreclosed by binding precedent as set forth by the Supreme Court and the Eleventh Circuit." DE:267:64.

Trump argues (at 12) that the fact that the district court "relied on alternative bases for dismissal" does not remedy the supposed error in dismissing without leave to further amend. He is wrong. He cites (at 10, 11, 12) *Vibe Micro, Inc. v. Shabanets*, which held that a plaintiff must be given leave to replead before the court "dismiss[es] his case with prejudice *on non-merits shotgun pleading grounds*." 878 F.3d 1291, 1296 (11th Cir. 2018). Here, the court dismissed Trump's complaint on the merits, while also criticizing the complaint as a shotgun pleading. That alone dispenses with Trump's argument. *See Hagan v. Comm'r, Ga. Dep't of Corr.*, No. 22-12180, 2023 WL 5621895, at *6 (11th Cir. Aug. 31, 2023) (per curiam) ("[U]nder our precedent, the district court was not required sua sponte to grant Plaintiff leave to amend in this situation *unless it dismissed Plaintiff's complaint on shotgun pleading grounds*"); *Nezbeda v. Liberty Mut. Ins. Corp.*, 789 F. App'x 180, 183 (11th Cir. 2019) (per curiam) (reversal might be appropriate "if the district court's *only* reason for dismissing the [plaintiffs'] complaint was that it was a shotgun

pleading," not where the court also concluded "the [plaintiffs'] claims were frivolous").

Regardless, Trump also admits (at 11 n.4) that Neustar raised in its motion to dismiss that his original complaint was a shotgun pleading. *See* DE:160:7n.8 (Neustar brief arguing complaint should be dismissed as shotgun pleading). This put Trump and his counsel on notice of the shotgun pleading problem under *Jackson v. Bank of America, N.A.*, 898 F.3d 1348 (11th Cir. 2018), on which he also relies (at 11). There, a defendant moved for repleading and "fully explained the defects in the [plaintiffs'] complaint," so this Court held the district court would not have abused its discretion in dismissing the complaint as a shotgun pleading, "especially considering that the [plaintiffs] agreed to file an improved complaint yet did not do so." *Id.* at 1359. The same is true here—just as in *Jackson*, the shotgun-pleading issue is an unnecessary sideshow, because the court below "consider[ed] the merits of each claim despite the complaint's shotgun nature and dismiss[ed] each claim on that basis." *Id.* at 1359.

## B.    Trump failed to allege a RICO or RICO conspiracy claim.

To state a civil RICO claim, a plaintiff must plausibly allege that each defendant (1) "operated or managed an enterprise" (2) through a pattern of racketeering activity (3) consisting of at least two predicate acts (4) that caused plaintiff to suffer injury to business or property "by reason of" the substantive RICO violation.  *Ray v. Spirit Airlines*, 836 F.3d 1340, 1348 (11th Cir. 2016) (citing 18 U.S.C. § 1962(c)).  A RICO claim "must be dismissed" if "a plaintiff fails to adequately plead any one of these elements."  *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).  As the district court correctly held, Trump's RICO claims fail "on the merits at every step of the analysis."  DE:267:30.

### 1.    Trump failed to allege a RICO enterprise.

A RICO enterprise is "a continuing unit that functions with a common purpose."  *Boyle v. United States*, 556 U.S. 938, 948 (2009). Groups affiliated for legitimate purposes—like political campaigns and their agents—do not constitute RICO enterprises.  Rather, "the relevant 'purpose' in an association-in-fact enterprise is the members' shared purpose of engaging in *illegal activity*."  *Al-Rayes v. Willingham*, 914 F.3d 1302, 1308 (11th Cir. 2019); *see Cisneros*, 972 F.3d at 1211 (affirming

dismissal where complaint failed to allege a shared "purpose of enriching themselves through *a particular criminal course of conduct*").

Here, the alleged RICO enterprise consists of Clinton and her campaign, the DNC, their former outside counsel, and others who allegedly performed work for the campaign. DE:177:¶530. Far from pursuing unlawful ends, these defendants shared a purpose that was wholly legitimate: advocating the election of Clinton, the Democratic candidate, to the presidency. DE:177:¶¶2, 9. Although Trump frames this legitimate political activity pejoratively, his allegations that the RICO defendants sought to "harm [his] political reputation," "damag[e] his electability," and "sabotag[e] his political career," Br. 19 (quoting DE:117:¶531), reveal that this case is fundamentally an attempt to relitigate grievances from the 2016 election (which *he won*). But Trump cannot spin a RICO enterprise out of campaign activity that lies "at the heart of the First Amendment's protection." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978). As the district court correctly held, "neither politically opposing Plaintiff ... nor engaging in political speech about Plaintiff that casts him in a negative light is illegal." DE:267:42.

31

Trump argues (at 20) that he alleged "numerous facts" showing that the RICO defendants shared an "illegal purpose," but does not describe what these supposed "facts" are. He instead provides (at 20) a string citation to 67 paragraphs in his amended complaint that simply repeat the conclusory charge that Clinton "approved a campaign plan to stir up a scandal against U.S. Presidential candidate Donald Trump," DE:177:¶162, and the other RICO defendants purportedly contributed to "a public smear campaign" designed to "ruin[] his opportunity to be elected," DE:177:¶¶78, 138. This rhetoric cannot substitute for well-pleaded facts necessary to show a common purpose to engage in illegal racketeering activity.

Trump likewise fails to satisfy the enterprise requirement with his assertion (at 19) that the RICO defendants used "deceptive, criminal and fraudulent *means*" to oppose his candidacy. Not only are these assertions conclusory, but they address a "separate element" of the claim—the pattern of racketeering activity. "The 'enterprise' is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). What defines the enterprise is the common "purpose of

conducting illegal activity." *Jackson v. BellSouth Telecomms*, 372 F.3d 1250, 1264 (11th Cir. 2004). Lacking any allegation of a shared, illicit purpose, Trump flunks this basic RICO requirement.

Having failed to plausibly allege a RICO enterprise in his amended complaint, Trump invites the Court (at 20) to rely on the Durham Report, which he says confirms "the enterprise's existence." But the Durham Report is not part of the record on appeal (and would not help in any event). When Trump sought an indicative ruling from the district court, he did not attach the Durham Report to his motion, nor tender an amended complaint incorporating relevant citations. DE:343:7-8. Instead, he attempted to make the Report part of the record by requesting that the district court take judicial notice of it as a "government document[]." DE:331:3n.2. But federal courts may notice only "a fact that is not subject to reasonable dispute," Fed. R. Evid. 201(b), a category that does *not* include allegations from other court or agency proceedings offered for their truth. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The Durham Report contains numerous unproven allegations lifted from the Special Counsel's indictments of Sussmann and Danchenko, both of whom were acquitted by unanimous

33

juries after separate trials. None of those disputed allegations is judicially noticeable.

Even assuming the Report were properly part of the record on appeal, it does nothing to fix Trump's failure to plead the "existence" of a RICO enterprise. According to Trump (at 20), the Report "discusses" a chain of business relationships in which the Clinton campaign "hired" outside counsel at Perkins Coie LLP, which in turn "hired Fusion GPS to perform 'opposition research' on President Trump." Even accepting those extra-record allegations as true, Trump fails to explain how engaging third parties to perform garden-variety campaign activity could possibly add up to an illegal RICO enterprise. He also lists (at 20-21) other defendants who allegedly contributed to or disseminated this "opposition research," but none of them is alleged to be a participant in the RICO enterprise. DE:177:¶530.

Trump finally argues (at 20-21) that the Report bolsters the "existence" of a RICO enterprise because it (1) "discusses" how Sussmann purportedly "worked with" Joffe to "to create a 'narrative' to tie President Trump to Russia involving Alfa Bank" and (2) confirms that appellee Marc Elias provided "updates" to Clinton campaign staff about the same

34

topic. But there is nothing illicit about developing a "narrative" about an opposing political candidate or sending email "updates."

### 2. Trump failed to allege any racketeering predicate acts.

Trump also failed to plausibly allege that "each defendant engaged in … a pattern of racketeering activity involving at least two predicate criminal acts." *Cisneros*, 972 F.3d at 1208. On appeal, he abandons one of the three predicate acts he relied on in the district court—theft of trade secrets—and now stakes his RICO claims on only two: (1) obstruction of justice under 18 U.S.C. § 1512(b)(3); and (2) wire fraud under 18 U.S.C. § 1343. Neither has merit.

***Obstruction of Justice***. Trump fails to allege that any defendant violated § 1512(b)(3), which prohibits "misleading conduct toward *another person*, with intent to ... hinder, delay, or prevent the communication *to a law enforcement officer* ... of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3). By its plain text, this statute requires misleading conduct "toward someone besides the investigating federal law enforcement agents themselves." *United States v. Amri*, No. 1:17-cr-50, 2017 WL 3262254, at *14 (E.D. Va. July 31, 2017), *aff'd*, 738 F. App'x 794 (4th Cir.

2018); *see also United States v. Williams*, 571 F. App'x 887, 890-91 (11th Cir. 2014) (per curiam) (applying 18 U.S.C. § 1001 to statements made to FBI and § 1512(b)(3) to interference with third-party witness).  Trump, however, asserts (at 23) only that certain defendants "made numerous false and misleading statements *to* federal law enforcement officers." Because the conduct alleged does not fit within the text of the statute, Trump has failed to plead a predicate act under § 1512(b)(3).

Fighting the plain language of the statute, Trump asserts (at 24) that the district court "erred when it found the statements to law enforcement officers do not apply."  But the cases on which he relies are inapposite, because they involve false or misleading evidence conveyed to third parties—*state* law enforcement officers.  *See United States v. Veal*, 153 F.3d 1233, 1245 (11th Cir. 1998) (defendants "misled state investigators," and thereby prevented communication of facts to the FBI); *United States v. Ronda*, 455 F.3d 1273, 1285 (11th Cir. 2006) (defendants made false statements to state investigators prior to a federal investigation); *United States v. Ronga*, 682 F. App'x 849, 851-52, 855 (11th Cir. 2017) (defendant police officer lied to state investigators). Trump has not identified any case holding that allegedly "misleading

conduct" directed *at* a federal law enforcement officer violates § 1512(b)(3).

Even assuming the statute proscribes misleading reports to a federal officer, Trump also fails to establish a violation of § 1512(b)(3) because the complaint contains no allegation that "any Defendant interfered with law enforcement with respect to the commission or possible commission of *any federal offense*." DE:267:33. Trump argues (at 24) that certain defendants provided false information to the FBI concerning unspecified "election crimes" by "a Presidential candidate," but this vague and conclusory reference to crimes not identified in the amended complaint fails to adequately allege that any RICO defendant interfered with the communication to federal law enforcement of information concerning a federal offense.

Trump notably fails to detail the supposedly false information defendants tendered to the FBI. *See* Br. 23 (citing DE:177:¶¶94-123, 172-94, 204-25, 297-311). Instead, he alleges vaguely that (1) Steele sent a dossier to federal agents containing "false information" "purporting to show compromising ties" between Trump and Russia, DE:177¶158; (2) Sussmann misrepresented that he was not acting "on behalf of a client

or company" when he conveyed information to the FBI suggesting a suspicious pattern of activity between Trump's servers and those of a Russian bank, DE:177:¶¶177-84, 204-14; and (3) Sussmann and Joffe engaged in "circular reporting" by separately providing white papers to the FBI that appeared to "corroborate" each other's findings on a connection between Trump and Alfa Bank, DE:177:¶¶172, 205, 218.

Steele, however, is not alleged to be a member of the RICO enterprise, DE:177:¶530, and his dossier therefore cannot serve as a predicate act under § 1512(b)(3). And as to Sussmann and Joffe's alleged conduct, Trump does not allege or explain why the supposed "circular reporting" falls under § 1512(b)(3). Although Trump "endeavors to significantly broaden this provision to criminalize the dissemination of *any* purportedly misleading information, regardless of any connection to some federal offense ... that is not what the statute says, and Plaintiff may not misconstrue it in this way." DE:267:33.

Trump also does not allege that any RICO defendant other than Sussmann or Joffe engaged in *any* misleading conduct to hinder, delay, or prevent information concerning any federal offense from reaching a law enforcement officer. 18 U.S.C. § 1512(b)(3). He therefore fails to

show that "*each* defendant engaged in ... a pattern of racketeering activity involving at least two predicate criminal acts," *Cisneros*, 972 F.3d at 1208, as required to state a civil RICO claim.

Trump finally argues (at 22-23) that the district court "erred" in requiring that he allege misleading conduct in connection with "an official proceeding," which he claims is not "require[d]" under § 1512(b)(3). But the district court held only that an official proceeding must be shown under a *separate* subsection, § 1512(c), which Trump relied on below but has abandoned on appeal. DE:267:31-32. This mischaracterization of the district court's opinion provides no basis for reversal.

**Wire Fraud**. Trump fails to plead that any defendant engaged in the predicate act of wire fraud for two independent reasons: (1) his allegations of fraud fail to satisfy "the heightened pleading standard of Rule 9(b)," *Miccosukee Tribe of Indians v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015), and (2) he fails to plead facts showing that the alleged acts of wire fraud deprived him of "money or property," *Ciminelli v. United States*, 598 U.S. 306, 312 (2023).

39

1.    Substantive RICO violations premised on mail or wire fraud "must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with [Federal Rule] 9(b)'s heightened pleading standard." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).   Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud," including "the precise statements" made, the "manner in which these statements misled" the plaintiff, and "what the defendants gained by the alleged fraud."   *Id.*   The plaintiff must also allege facts "with respect to *each defendant's* participation in the fraud."   *Id.*

Trump directs the Court to a catalog of allegedly false email communications, tweets, and televised public statements supposedly constituting wire fraud.   Br. 27 (citing DE:177:¶583(a)-(gg)).   But Rule 9(b) requires a plaintiff to specify "precisely" the content of the alleged false statement, as well as why it was false, "the manner in which [it] misled the plaintiff," and what the defendant gained as a result. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019).   This specificity is nowhere to be found.   In many instances, Trump does not describe the content of the allegedly

false communications at all, DE:177:¶583(a)-(c), (j), (m)-(p), and in all instances, he does not allege that *he* was the one defrauded, DE:177:¶577 (alleging that the RICO defendants "engaged in a calculated scheme to defraud *the news media, law enforcement and counterintelligence officials*").

The alleged acts of wire fraud include numerous emails between defendants and members of the press, DE:177:¶583(a)-(c), (m)-(t), but Trump offers no explanation of why they are false or who was allegedly defrauded.  For example, Trump complains of a 2016 email Elias sent Clinton campaign officials entitled "Alfa Bank article," but fails to specify what the email said, why it was false, or how it supposedly misled Trump (or anyone else).  DE:177:¶583(j).  Trump also targets public statements by Clinton and her campaign staff criticizing him and raising "questions about his ties to Russia," DE:177:¶583(u)-(w), (y), (bb), (dd)-(gg), but this quintessential political speech is protected by the First Amendment.  *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191-92 (2014) ("[T]he First Amendment has its fullest and most urgent application precisely to the conduct of campaigns for political office.").

Unable to meet Rule 9(b)'s particularity standard, Trump attempts to lower the bar, arguing that "courts apply Rule 9(b) less stringently when specific 'factual information about the fraud is peculiarly within Defendant's knowledge or control.'"  Br. 26 (quoting *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (per curiam)).  But Trump does not identify what facts lie in the particular control of any of the RICO defendants.  Even if he had, the unpublished case that supposedly supports a relaxed application of Rule 9(b) still requires a plaintiff to "accompan[y his] legal theory with factual allegations that make [his] theoretically viable claim plausible," *Hill*, 2003 WL 22019936, at *3, a standard that Trump has not satisfied.

Even as to one element of the wire fraud claim that is indisputably within his "knowledge and control"—his claimed damages—Trump offers only vague and conclusory allegations.  *See id.*  Trump asserts that the allegedly fraudulent scheme caused him "loss of business opportunities, loss of competitive position, and/or loss of business revenue, loss of goodwill, loss of trade secrets, and/or loss of contractual relations."  Br. 27 (quoting DE:177:¶578).  But he fails to name a single customer lost or contract cancelled as a result of the Clinton campaign's private emails to

reporters or other alleged acts of wire fraud. This sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" does not satisfy Rule 8, much less the heightened standard of Rule 9(b). *Iqbal*, 556 U.S. at 678.

2.    Even assuming Trump had satisfied Rule 9(b), which he has not, his wire fraud allegations still fall short. The federal wire fraud statute, 18 U.S.C. § 1343, is not a catchall prohibition on "all acts of dishonesty," but forbids "only deceptive schemes to deprive the victim of money or property." *Kelly v. United States*, 590 U.S. 391, 398 (2020). Trump, however, does not allege that the RICO defendants intended to deprive him or anyone else of "something of value." *See United States v. Wheeler*, 16 F.4th 805, 820 (11th Cir. 2021) (per curiam). His theory is that these defendants launched a scheme "to defraud the news media, law enforcement and counterintelligence officials for the purpose of proliferating a false narrative of collusion between Trump and Russia" during the 2016 election. DE:177:¶577; Br. 19, 30. Absent any allegation that "an object of the[] dishonesty was to obtain ... money or property," *Kelly*, 590 U.S. at 393, Trump fails to plead wire fraud as a predicate act.

Citing a single district court case that lacks any analysis, Trump argues that the defendants deprived him of property in the form of his

damaged "political and/or business reputation." Br. 27-28 (citing *Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988)). But loss of reputation sounds in defamation and is not compensable under the RICO statute.[8] "Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)." *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999); *see also Ciminelli*, 598 U.S. at 309 ("the federal fraud statutes criminalize only schemes to deprive people of traditional property interests"). Thus, "federal courts routinely and soundly reject" attempts "to spin an alleged scheme to harm a plaintiff's reputation into a RICO claim." *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73-74 (E.D.N.Y. 2020) (collecting cases).

Trump fares no better with his conclusory assertions (at 27) that "loss of existing and future business opportunities," "loss of competitive position," and/or "loss of business revenue" "constitute 'deprivation' of property" for purposes of his wire fraud claim. To plead wire fraud as a

---

[8] Trump presumably did not style this alleged scheme as a defamation claim because defamation is not a RICO predicate act. *See, e.g.*, *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 191-92 (D.D.C. 2019).

predicate act, Trump must show that "an *object*" of the alleged fraud "was property." *Kelly*, 590 U.S. at 400. Here, however, Plaintiff alleges that the "object" of the RICO defendants' alleged scheme was "to cripple Trump's initial bid for presidency and tarnish his electability for future elections." DE:177:¶2. Any (wholly unspecified) business harms were simply the side effects of a competitive election. Absent well-pleaded factual allegations that the "*aim*" of the RICO defendants was "to obtain money or property," rather than defeat Trump at the polls, Trump fails to state a wire-fraud claim. *Kelly*, 590 U.S. at 404.

Trump's citation (at 28) to cases supposedly embracing "lost customers and lost revenue" and "injuries to competitive position" is beside the point. In those cases, the plaintiffs were businesses that alleged losses proximately caused by the fraudulent conduct of their direct competitors—not collateral damage to personal business interests from unrelated political activity. *See Alix v. McKinsey & Co.*, 23 F.4th 196, 205-06 (2d Cir. 2022) (competitor's fraud on bankruptcy court proximately caused plaintiff to lose assignments); *Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 264 (4th Cir. 1994) (plaintiff "lost revenue due to the necessity of offering lower rates to match

[defendant's] fraudulent ones"); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 565 (5th Cir. 2001) (finding that luring customers from a competitor *did not* satisfy proximate-causation requirement). Those cases have no application here, where the RICO defendants were involved in efforts to compete with Trump for votes, not business.

Trump argues finally (at 27) that the district court erred in "narrowing" the wire fraud statute to cover only "*taking* property," when it also extends to "*depriving* someone of property." Trump fails to cite the pages where the district court supposedly adopted this "narrowing" construction, because they do not exist. Instead, quoting the Supreme Court's opinion in *Kelly*, 590 U.S. at 397-98, the district court recognized that the wire fraud statute prohibits "deceptive schemes to *deprive* the victim of money or property." DE:267:38. The district court rejected the claim *not* because of a false distinction between "taking" and "depriving," Br. 27, but because the injury Trump claims—loss of "political and/or business reputation"—is "not the type of harm the wire fraud statute remediates." DE:267:38. Trump has shown no error in that straightforward application of well-settled law.

46

###    3.    Trump failed to allege a pattern of racketeering activity.

Beyond pleading two specific predicate acts by each defendant, a RICO plaintiff must also allege that defendants engaged in a pattern of racketeering activity—that is, that the acts "amount[ed] to, or ... otherwise constitute[d] a threat of, continuing racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 240 (1989), by pleading either "closed-ended" or "open-ended" continuity, *Jackson*, 372 F.3d at 1265-66. Here, Trump does neither.

A party can allege closed-ended continuity "by proving a series of related predicates extending over a substantial period of time." *Jackson*, 372 F.3d at 1265. This Court has rejected allegations of closed-ended continuity when the supposed pattern of racketeering activity lasted less than one year, *Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009) (per curiam), and other circuits have rejected patterns lasting less than two years, *Jackson*, 372 F.3d at 1266 (collecting cases).

Here, the alleged predicate offenses took place over an approximately six-month period around the 2016 election—the alleged obstruction of justice between September 2016 and February 2017, DE:177:¶¶205, 218, 304, 561-65, and the alleged wire fraud between May

47

and October 2016, DE:177:¶583(a)-(y).  This brief interval of campaign-related activity is "wholly insufficient" to establish close-ended continuity under this Court's precedents.  *See Jackson*, 372 F.3d at 1266 (rejecting nine-month period as insubstantial).

Trump asserts (at 31) that the last act of obstruction occurred in November 2017, when Danchenko allegedly "lied" to the FBI "about the sources relied upon in compiling" the Steele dossier.  DE:177:¶572(b).  But neither Danchenko nor Steele is a RICO defendant, DE:177:¶530, and Trump's conclusory allegation that Danchenko acted "at the direction of" the RICO defendants is insufficient to allege that a predicate act was committed 2017, DE:177:¶572(b).  Trump likewise asserts that the alleged wire fraud continued through February 2022, citing a Clinton tweet that "Trump & Fox are desperately spinning up a fake scandal to distract from his real ones."  DE:177:¶583(gg); Br. 31.  But this tweet is political speech, not a RICO predicate act, and is unrelated to the alleged acts of wire fraud that took place years earlier.  *See* DE:177:¶583(a)-(y); *Jackson*, 372 F.3d at 1265 (requiring "related predicates" to occur "over a substantial period").

Even if the alleged racketeering "took place over longer periods of time," courts have refused to find closed-end continuity where "the RICO allegations concern only a single scheme with a discrete goal." *Jackson,* 372 F.3d at 1267; *see also Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) (similar). Here, the RICO defendants allegedly shared a single, time-limited objective: "to vilify Donald J. Trump" in connection with his 2016 campaign and presidency. DE:177:¶2. Trump fails to address this issue in his opening brief, even though it was "one of the grounds on which the district court based its judgment." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-82 (11th Cir. 2014); DE:267:40. He has therefore "abandoned any challenge of that ground on appeal." *Sapuppo*, 739 F.3d at 680-82.

Trump has also failed to allege open-ended continuity, which requires showing that "the alleged acts were part of the defendants' regular way of doing business, or that the illegal acts threatened repetition in the future." *Jackson,* 372 F.3d at 1267. The amended complaint provides no basis to infer such activity will recur, nor that the alleged acts were part of a regular way of doing business, and "single schemes with a specific objective and a natural ending point can almost

49

never present a threat of continuing racketeering activity." *Ferrell*, 311 F. App'x at 257; DE:177:¶240 (alleging scheme's "deadline" was "Election Day" 2016). Trump argues only (at 30) that the existence and public nature of the "ongoing scheme" suggest it will "likely continue beyond the present," but this is unmoored from any well-pleaded facts and fails to sufficiently allege open-ended continuity.

### 4. Trump failed to allege that any RICO violation caused injury to his business or property.

Even had Trump alleged a pattern of racketeering activity, which he has not, he failed to allege an injury to his business or property directly caused by that racketeering. *See Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 452 (2006); 18 U.S.C. § 1964(c). "To qualify as a direct cause of a plaintiff's injury, a RICO defendant's misconduct must have been a substantial factor in the sequence of responsible causation." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014). "A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Grp. v. City of New York,* 559 U.S. 1, 9 (2010).

Trump asserts (at 35) that, as a proximate cause of the defendants' alleged racketeering activity, "numerous unfounded investigations ... were fraudulently diverted and abused." But Trump fails to allege "the

50

sequence of responsible causation," *Simpson*, 744 F.3d at 712, from the alleged RICO predicate acts, to the opening of these investigations, and then to the unspecified business and reputational losses that supposedly resulted from them. *See* Br. 35-36. He does not even name most of these investigations, describing them generically (at 35) as "congressional" and "Special Counsel" inquiries into topics unknown.

As to the few investigations Trump identifies, he again fails to link them to the RICO defendants or allege facts demonstrating that these investigations caused injury to "his business or property." 18 U.S.C. § 1964(c). He fails to explain (at 36), for example, how the FBI's Crossfire Hurricane investigation could have cost him "legal fees" or "loss of business revenue" when that investigation concerned only individuals "associated with the Trump campaign," DE:177:¶¶345, 386; DE:226-1:59—not Trump himself. He also fails to trace that investigation to the RICO defendants, given that the Department of Justice's inspector general concluded, in a report incorporated by reference into the complaint, that the FBI "opened Crossfire Hurricane in July 2016 following the receipt of certain information from a Friendly Foreign Government." DE:226-1:1.

Trump also blames the RICO defendants (at 35) for the "full-field Alfa Bank investigation," which he claims the FBI opened after Sussmann reported "network communications" between Trump Organization servers and those of the Russian bank.  DE:177:¶214.  But he concedes that the FBI "debunked" the "Alfa Bank allegations" by October 5, 2016, a mere two weeks after Sussmann allegedly approached the FBI with them.  DE:177:¶¶214, 343-44.  Trump continues to offer no plausible explanation (at 36) for how he incurred "loss of business revenue," or any other injuries as a result of this short-lived FBI investigation that resulted in no charges against him.

Trump argues, finally, that the alleged racketeering activity resulted in the publication of "countless false, damaging, and defamatory articles" that "tarnished Plaintiff's political reputation."  Br. 36 (citing DE:177:¶614).  But he does not even identify the news content at issue, let alone supply the required "link," *Hemi Grp.,* 559 U.S. at 9, between any third party's publishing decisions and the alleged predicate acts.  His claimed reputational harm is not actionable under the RICO statute in any event.  *See supra*, p. 44 & n.8.

52

### 5.    Trump failed to allege a RICO conspiracy.

Because Trump has "failed to allege sufficient facts to support [his] substantive RICO claim," his "RICO conspiracy claim also fails." *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1349 (N.D. Ga. 2017). To state a RICO conspiracy claim under 18 U.S.C. § 1962(d), a "plaintiff must allege an illegal agreement to violate a substantive provision of the RICO statute." *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326, 1342 (S.D. Fla. 2008). Trump's conclusory allegations of conspiracy "unsupported by actual allegations of fact" did not suffice. *Id.* at 1343; DE:177:¶¶619–33. A RICO conspiracy claim also requires that the overt act causing injury be an act of racketeering. *Beck v. Prupis,* 529 U.S. 494, 495-96 (2000). Here, however, Trump alleged neither a predicate act of racketeering nor any injury from such an act. *See supra*, pp. 30-52.

### C.    Trump failed to allege a claim for injurious falsehood.

Injurious falsehood is a close cousin to defamation, except that it protects "economic interests" rather than "personal reputation." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004). "Injurious falsehood essentially concerns intentional interference

with another's economic relations." *XTec, Inc. v. Hembree Consulting Servs., Inc.*, No. 14-cv-21029, 2014 WL 12729173, at *6 (S.D. Fla. Aug. 1, 2014). Because the tort vindicates commercial interests, a plaintiff must plausibly allege, among other elements, that (1) the defendant published "a falsehood," (2) that he knew the falsehood would "likely induce others not to deal with the Plaintiff," (3) "the falsehood did play a material and substantial part in inducing others not to deal with the Plaintiff," and (4) special damages. *Kanarick v. GE Credit Retail Bank Care Credit*, No. 13-cv-80039, 2013 WL 12092479, at *4 (S.D. Fla. Sept. 6, 2013).

Trump's injurious falsehood claim fails at the outset because the alleged injuries he claimed are not "economic" in nature—a point Trump does not dispute on appeal. *See Falic*, 347 F. Supp. 2d at 1268. Although the amended complaint recited boilerplate allegations that Trump "suffer[ed] economic losses" and "has been injured in his business and property," DE:177:¶¶653-54, the gravamen of the alleged injury concerned Trump's political prospects, DE:177:¶2. The district court rejected the injurious falsehood claim on that basis, holding that Trump had no "property or contract right to political office." DE:267:47. Although Trump notes his disagreement with this conclusion (at 38), he

54

offers no argument for why it is wrong, so has waived any challenge to that point "by failing to develop any argument on it in his opening brief." *United States v. Moran*, 778 F.3d 942, 985 (11th Cir. 2015). Trump likewise fails to challenge the district court's judgment dismissing the injurious falsehood claim for failure to plead (1) falsity, (2) the impact of the falsity on a third party's desire to engage in business with him, and (3) special damages. DE:267:48-49. Although Trump asserts (at 39) that he "properly alleged the statements were knowingly false," he does not identify what these statements are or explain why they are false or injurious. Nor does he address the "desire to deal" or "special damages" elements the district court found fatally deficient. Trump's failure to challenge these separate "grounds on which the district court based its judgment" requires affirmance. *Sapuppo*, 739 F.3d at 680.

The injurious falsehood claim also fails because it seeks to punish speech fully protected by the First Amendment. Trump argues (at 39) that "the First Amendment does not protect Defendants' statements"—statements that he again fails to identify—because they were made with actual malice. But his allegations of malice are entirely formulaic, Br. 39; DE:177:¶¶636, 652, and therefore insufficient to overcome the First

55

Amendment protections for political speech, *see Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018) (affirming dismissal of defamation claim due to plaintiff's conclusory allegations about actual malice).

### D. Trump has waived his challenge to the dismissal of his claim for malicious prosecution conspiracy.

Trump argues (at 40) that the district court erred in dismissing his claim for malicious prosecution conspiracy, but he offers no argument in support of this position beyond the conclusory statement that "the allegations showed an illegal combination."  This claim is therefore waived.  *See Moran*, 778 F.3d at 985.  He also fails to explain why the conspiracy claim should survive when the district court dismissed the malicious prosecution claim on the merits—a ruling Trump has not appealed.  *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) ("An actionable conspiracy requires an actionable underlying tort or wrong.").

### III. The district court appropriately sanctioned Appellants for their frivolous suit.

The district court imposed sanctions in this case for several independent reasons.  The amended complaint was beset with "structural deficiencies," jurisdictional problems, and a lack of "sufficien[t] ... allegations."  DE:267:2-3.  Most of Trump's claims were "not only

unsupported by any legal authority but plainly foreclosed by binding precedent." DE:267:64. Moreover, Appellants had fair notice of these "inadequac[ies] ... from the start," but doubled down instead of fixing them as any "reasonable lawyer" would have done. DE:302:1. And, as the district court concluded, Appellants pursued this case "for a political purpose," and it "should never have been brought." DE:302:1. It "was completely frivolous, both factually and legally, and ... was brought in bad faith ...." DE:302:6. Far from abusing its discretion, the district court imposed sanctions after ample briefing and upon careful consideration. The sanctions should be affirmed.

## A. Appellants had ample notice of both the possibility of, and basis for, sanctions.

Appellants argue (at 58) that they were denied adequate notice and due process because "the district court did not even hint at … sanctions until its order granting dismissal." They further contend (at 59-63) they were denied fair notice because they had no opportunity to "cure" their wrongful conduct before sanctions issued, drawing repeated parallels to sanctions under Rule 11.

As an initial matter, Appellants waived their right to argue that the district court did not afford them proper notice because they made no

such argument below.  They instead argued only that they lacked " 'fair notice' that the Amended Complaint *was purportedly a 'shotgun pleading,'*" so "it would be inappropriate to award sanctions against Plaintiff's Counsel *on this basis alone*."  DE:285:8.  The district court did not impose sanctions "on [that] basis alone," so this Court need go no further in rejecting the broader notice argument now advanced for the first time on appeal.  *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1140 (11th Cir. 2007) (declining to "consider issues not presented in the first instance to the trial court.").

In any event, Appellants had ample notice of both the possibility of and basis for sanctions.  *Donaldson v. Clark*, on which Appellants rely, explains that "Rule 11 *itself* constitutes a form of notice since the rule imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed."  819 F.2d 1551, 1560 (11th Cir. 1987) (en banc).  Nor can Appellants escape sanctions by arguing that the district court can impose sanctions only for conduct that occurs *after* a specific warning (which Appellants had here).  This Court has affirmed sanctions where the district court alerted a party and counsel to the possibility of sanctions for their *past* conduct, then gave

58

them an opportunity to respond in writing.  *Johnson v. 27th Ave. Caraf*, 9 F.4th 1300, 1311-12 (11th Cir. 2021).  That notice was "more than 'fair.'" *Id.* at 1312; *see also Armstead v. Allstate Prop. & Cas. Ins. Co.*, 705 F. App'x, 783, 786 (11th Cir. 2017) (per curiam) (similar; sanctions imposed for prior misconduct).

As to the basis for sanctions:  as in *In re Mroz*, on which Appellants also rely, Appellees have "[f]rom the onset ... alleged that this action was instituted without a reasonable inquiry into the underlying facts," and "accused [plaintiff] and [his] attorneys of acting in bad faith."  65 F.3d 1567, 1576 (11th Cir. 1995) (finding notice adequate, but remanding for further proceedings on the question of bad faith).  The extensive proceedings below provided Appellants with notice of the many sanctionable deficiencies in their pleadings and warned them that they could not proceed in bad faith and for a political purpose, but they obdurately refused to relent, and doubled down by repleading.

A procedural synopsis proves the point.  The original complaint weighed in at 108 pages and 508 paragraphs.  DE:1.  Less than a month after it was filed, Clinton moved to dismiss it with prejudice, identifying many of the fundamental factual deficiencies and legal flaws that would

ultimately lead the district court to dismiss the amended complaint. DE:52. Other appellees joined Clinton's motion to dismiss and filed their own motions alerting Appellants to additional, fatal defects in the complaint. *See* DE:124; DE:139; DE:141; DE:143; DE:144; DE:145; DE:146; DE:147; DE:149; DE:157; DE:159; DE:160; DE:162 & DE:163; DE:165. Collectively, Defendants prepared 204 pages of motion-to-dismiss briefing showing the obvious substantive deficiencies and technical defects of that original pleading.

Appellants sought an extension of time to file an amended complaint, arguing that a single amendment in response to all motions to dismiss "would allow the Plaintiff an opportunity to cure the deficiencies raised in those motions." DE:66:2-3.

Far from "cur[ing] the deficiencies," DE:66:3, "Plaintiff added eighty new pages of largely irrelevant allegations that did nothing to salvage the legal sufficiency of his claims," DE:267:64. And now, on appeal, Appellants do not even mention the dismissal of *ten of Trump's sixteen causes of action*, blithely ignoring the district court's conclusions that their Computer Fraud and Abuse Act, theft of trade secrets, Stored

60

Communications Act, "agency," and respondeat superior claims were all frivolous.

Indeed, even as to the claims Trump does defend on appeal, the amended complaint failed to address many of the noted defects at all. For example, on injurious falsehood, Appellees warned Appellants that—in addition to the First Amendment infirmities with their claim—they had not alleged necessary elements. DE:52:16-17. Appellants made no real changes in the amended complaint to address these clear-cut defects. DE:267:46-48. Similarly, Appellees also informed Appellants that the claim for malicious prosecution lacked an essential element: any prosecution commenced against Trump. *See, e.g.*, DE:52:4; DE:143:9-13; DE:147:13-15; DE:157:13. The amended complaint left the section unchanged, too, except to add irrelevant details about Trump's former Deputy Attorney General Rod Rosenstein (and to add him as a defendant). These are only a few of the "recklessly advanced claims foreclosed by existing precedent that the most basic legal research would have revealed." DE:302:19.

Appellees' motions also warned Appellants about the many ways they "consistently misrepresented and cherry-picked portions of public

reports and filings to support a false factual narrative," "[o]ften [with] the report or filing actually contradict[ing their] allegations."  DE:302:14. The amended complaint nevertheless repeated the inaccurate or misleading citations to the incorporated materials.

Appellees' motions to dismiss the original complaint plainly put Appellants on notice of the frivolity of Trump's claims.  The objective frivolity of the claims, Appellants' blunt-force refusal to remedy, or even acknowledge the issues, and the improper purpose behind the suit amply support the award of sanctions here.  *See Jackson*, 898 F.3d at 1360.  And after Appellants failed to fix any of these issues in the amended complaint, Appellees filed a further 47-page joint motion to dismiss raising the same defects; Appellants opposed; Appellees replied; and the district court dismissed.  DE:226, DE:237, DE:250, DE:267.  Thereafter, Appellee Dolan served a motion for Rule 11 sanctions pursuant to a previously served Rule 11 letter; other Appellees sought sanctions under 28 U.S.C. § 1927, the Defend Trade Secrets Act, and the district court's inherent authority.  DE:280.

There is not much more notice Appellants could have received as to the sanctionable defects in this lawsuit, and certainly none to which they

62

had any right.  The Appellees who sought sanctions submitted a detailed schedule of attorneys' fees, with supporting billing entries and attorney declarations, and reduced the rates sought "from 28% to 66% less than the rates actually billed," in keeping with the local lodestar rates. DE:302:38.  They conferred twice with Trump's counsel.  Appellants fully briefed responses to both sanctions motions, DE:270; DE:285, and had ample opportunity to lodge specific objections to Appellees' requested fees and supporting documentation, DE:285-1, DE:297:33.  Appellants offered no objection to $621,043 of Appellees' requested fees.[9]  Nevertheless, the district court carefully and, in some instances, *sua sponte*, examined and reduced those amounts in determining the ultimate award.  DE:302:36-45.

In sum, as this Court has held, notice of potential inherent-power sanctions "can come from the party seeking sanctions, from the court, or from both."  *In re Mroz*, 65 F.3d at 1575.  And there is "no basis for

---

[9] Indeed, Appellants' initial objection to fees was so "indecipherable," DE:302:35, that the district court *sua sponte* sought a corrected set of objections, DE:292:33, providing even more notice and process than ordinary.  The corrected objections remained beset by "numerical discrepancies" and "multiple miscalculations."  DE:302:35-36.

requiring that in all instances notice be in writing and with the formality of pleadings." *Donaldson*, 819 F.2d at 1560. Appellants were on notice of the myriad deficiencies with the claims, but continued to pursue them. Dolan's Rule 11 letter and motion, and Appellees' joint sanctions motion also made plain the bases for the sanctions requests, and afforded Appellants meaningful opportunity to respond.

Although Appellants assert (at 62) that they had "no warning, notice, or opportunity to cure" the wrongdoing in this case, they had every chance to comply with their ethical obligations by not bringing an improper and frivolous suit in the first instance, and in particular, by reexamining their conduct after Appellees' motions put them on ample notice of the problems with their complaint.

What matters for notice is "function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them." *Jackson*, 898 F.3d at 1358. Here, just as in *Jackson*, Appellants had ample notice and opportunity to attempt to fix (or abandon) their defective suit, but nevertheless "filed an amended complaint afflicted with the same defects." *Id.* By "identif[ying]" these "deficiencies … in the[ir] multiple motions to dismiss," DE:302:19, Appellees' briefing

satisfied Appellants' due process rights to notice prior to dismissal with prejudice and the eventual issuance of sanctions, *see Jackson*, 898 F.3d at 1358-59 (plaintiff failed to fix "defects" "after being put on notice by Defendants of th[ose] specific defects").

Further, Appellants had the opportunity to respond to Dolan's Rule 11 motion and Appellees' sanctions motion prior to the imposition of sanctions and were heard through their briefing. That, too, constituted notice and satisfied due process. *See Johnson*, 9 F.4th at 1312; *see also Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1165 (9th Cir. 2003) (noting that receiving notice of possibility of sanctions and having the chance to respond is all most appellate courts require).

Ignoring all this, Appellants argue (at 61-62) that the district court's use of its inherent powers to impose sanctions was an "end-run around Rule 11's notice requirement, in defiance of essential procedural fairness." But *Chambers v. NASCO, Inc.*, 501 U.S. 32, 34, 38 (1991), rejected that very proposition: "The District Court's reliance on the inherent power did not represent an end run around the notice requirements of Rule 11." *Id.* at 56. While the offending parties in *Chambers* "received repeated timely warnings," their litigation spanned

65

many steps, including multiple rounds of injunctions and pleadings. *Id.* at 38-41, 56. The Supreme Court highlighted that procedural history in upholding the district court's imposition of sanctions at the end of litigation, and nowhere suggested that courts *must* provide such warnings at every step. *Id.* at 56.

This Court, too, has confirmed that, "although certain conduct may or may not be violative of Rule 11 ... it does not necessarily mean that a party will escape sanctions under the Court's inherent power." *In re Mroz*, 65 F.3d at 1575. Thus, the mere fact that the district court used its inherent power, rather than Rule 11, provides no appealable issue here.

## B.    There was no legal requirement (or need) for a hearing.

Appellants contend (at 63-64) the district court violated their due process rights "by not holding a hearing."  Just as with their notice argument, however, they never argued below that due process required a hearing, and only requested one "to the extent necessary," in connection with sanctions under 28 U.S.C. § 1927.  DE:285:13.  Although they "reserve[d] the right" to present evidence of "the substantive merits of Plaintiff's claims," DE:285:14, they never proffered any such evidence

66

through declarations accompanying their opposition brief. Indeed, they did not even seek oral argument on the sanctions motion. *See* S.D. Fla. Loc. R. 7.1(b)(2) (stating requirements for requesting oral argument or a hearing).

Moreover, the district court did not err in electing not to hold an evidentiary hearing, because there is no right to such a hearing in sanctions proceedings. This and every other circuit to consider the matter has consistently rejected such a requirement because, as the cases cited by Appellants state, a party may be heard either "orally *or in writing*." *In re Mroz*, 65 F.3d at 1575 (inherent-power sanctions); *Donaldson*, 819 F.2d at 1560 (Rule 11 sanctions); *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1307 (11th Cir. 2006) (party must be permitted "to justify its actions either orally or in writing"); *NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 377 (6th Cir. 2022) ("[A] district court need not give formal notice or hold a full evidentiary hearing" so long as a party "has the chance to brief the issue"); *O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1442, 2022 WL 17588344, at *6 (10th Cir. Dec. 13, 2022) (per curiam) ("disagree[ing]" that "an evidentiary hearing" was necessary to satisfy due process); *Angelico v.*

67

*Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 280 (3d Cir. 1999) (no hearing required); *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (same).

Appellants' cases are distinguishable.  In *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1242, 1251 (11th Cir. 2007), this Court stated offhand that "an attorney threatened with sanctions under § 1927 is entitled to a hearing," citing *Reynolds v. Roberts*, 207 F.3d 1288, 1302 (11th Cir. 2000).  But *Reynolds* states only that "[c]ounsel subject to section 1927 sanctions *are entitled to be heard regarding the matter*."  *Id.* And, when remanding for entry of an order to show cause, this Court in *Reynolds* specifically stated that "a hearing may be unnecessary" after briefing.  *Id.* at 1298 n.19.

Nor is *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*, any help to Appellants, who cite it for a footnote claiming that *Chambers* held that "due process requires hearings ... before the imposition of sanctions." 561 F.3d 1298, 1306 n.6 (11th Cir. 2009).  *Chambers* said no such thing, 501 U.S. at 56, as this and other courts have determined:  an opportunity to be heard, not a formal hearing, is all that is required.

Appellants also return to *In re Mroz*, where this Court remanded to the district court for an evidentiary hearing to determine whether sanctions were appropriate. 65 F.3d at 1576. But *In re Mroz* made clear that a court does not need to hold hearings before imposing sanctions in every instance, and only called for an evidentiary hearing because the record there provided no answer for why the bankruptcy court concluded there was bad faith. *Id.* Those circumstances are a far cry from the district court's order here, which provided detailed reasoning for its finding that Appellants acted in bad faith. *See* DE:302:1-2, 6, 14, 19, 21.

Finally, in *Campos v. City of Naples*, 202 F. App'x 381 (11th Cir. 2006) (per curiam), this Court reversed the imposition of sanctions not because of the lack of hearing, as Appellants imply (at 64), but because the district court acted egregiously by failing to provide any reasoning, notice, or opportunity to be heard. *See Campos*, 202 F. App'x at 385-86.

Simply put, the law demands no evidentiary hearing before a district court imposes sanctions under its inherent authority. Appellants had an opportunity to be heard through briefing, which is all that is necessary.

69

**C.    Appellants' pleading and repleading was in bad faith.**

Courts find bad faith warranting sanctions "where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); s*ee also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-25 (11th Cir. 2017) ("[I]n the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith.").  Additionally, a court may find bad faith when a party pursues a claim without investigating the facts upon which it relies.  *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1273 (11th Cir. 2009). Vindictive or other improper motives for filing the lawsuit can also support findings of bad faith.  *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002).  Because these findings require district courts to probe facts and assess character, this Court is loath to second guess a prudent exercise of discretion in assessing sanctions, and reviews findings of bad faith for clear error.  *See Sciarretta*, 778 F.3d at 1213.

Appellants advance three reasons that the district court's finding of bad faith was purportedly an abuse of discretion: (1) that the problems of shotgun pleading were overblown; (2) that the amended complaint

advanced plausible factual allegations; and (3) that Appellants made good-faith legal claims.

First, the district court concluded, based on significant analysis and discussion, that the lengthy pleading here was an abusive litigation tactic undertaken for an improper purpose. DE:302:6-14. While Appellants assert (at 65) that Trump's claims "are extremely complicated," so "[r]ealistically," his complaint needed to be some sort of a "shotgun," the Federal Rules have no such exception. On the contrary, in *Jackson*, this Court noted that a RICO complaint constituted "incomprehensible shotgun pleading" and "patently violate[d]" Rule 8. 898 F.3d at 1354-56.

A proper complaint must make plausible allegations in a short and concise manner, based on appropriate factual and legal bases. *E.g.*, *Iqbal*, 556 U.S. at 678-79. Appellants' failure to meet these ordinary good-faith standards, even after repleading with notice of the prior complaint's deficiencies, evinced bad faith and required substantial time from many attorneys (and the court) to address. Particularly in amending the complaint, Appellants had a duty "to consider the plausibility and the appropriateness" of their assertions, especially after notice of the glaring defects. *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1327 (11th

71

Cir. 2002) (per curiam) (affirming inherent-powers sanction). That they failed to do so is evidence of bad faith. DE:302:19, 21. Appellants say nothing substantive in response to the district court's analysis on this point, including its discussion of the harm that frivolous pleadings impose and the reasons they warrant sanctions. *See* DE:302:11-14.

Second, the district court correctly found that Appellants "consistently misrepresented and cherry-picked portions of public reports and filings to support a false factual narrative." DE:302:14. After a careful examination of the materials Appellants cited, the district court concluded that "[o]ften the report or filing actually contradicted [Plaintiff's] allegations," and found bad faith because Appellants' selective and misleading citations "happened too often to be accidental." DE:302:14. The district court provided several specific examples supporting its finding. DE:302:15-19.

Appellants do not address most of the district court's examples, arguing only (at 66) that they did not "knowingly make any false allegations or recklessly disregard truth or falsity in any pleadings" because they "had citations supporting the factual contentions and ... intended to rely on discovery to further expand them." This does nothing

to address or controvert the court's finding:  that the allegations in the amended complaint were often demonstrably at odds with the actual contents of the documents cited to support them.[10]

The only specific example Appellants advance (at 67) is the assertion that Special Counsel Mueller "exonerated Plaintiff of the bogus Russia collusion allegations."  But Mr. Mueller's report did not "exonerate" the President of wrongdoing, and in fact concluded that there were Russian efforts to interfere with the 2016 election.  The district court sanctioned Appellants because they continued to press this and other factual misrepresentations of the materials they cited, which were "neither … accurate nor fair."  DE:267:15.

Instead of addressing the district court's reasoning, Appellants largely rely on the Durham Report—which postdated the amended

---

[10] Appellants also assert that an evidentiary hearing would have shown that they engaged in good-faith efforts to substantiate their claims.  But they made no proffer, in the form of affidavits or otherwise, to the district court on that point.  Moreover, as explained above, no hearing was either requested or required.  And Appellants' assertion is hard to square when comparing the pleading's plain text to the facts contained in their own citations.  *See, e.g.*, DE:302:14-15 (pointing out numerous, yet not exhaustive, examples of when "[f]actual allegations were made without any evidentiary support in circumstances when falsity is evident").

complaint—in arguing (at 68) that it "highlights the district court's many clear errors of judgment." They nowhere acknowledge that the district court pointed out the fallacy of this reasoning in issuing its indicative ruling on the motion to reconsider sanctions in light of the Durham Report, observing that, "[e]ven if the Durham Report uncovered the sort of vast conspiracy alleged by Plaintiff (it plainly did not), it would not change the many legal conclusions I made in the Order dismissing Plaintiff's lawsuit." DE:343:1. "And whatever the Durham Report can be said to have uncovered, for purposes of this case, it does not change my findings that Movants acted in bad faith in bringing this lawsuit." DE:343:1.

"Movants—and especially the lawyers—have a duty of candor to the Court." DE:343:16. As the district court amply concluded, Appellants violated that duty by misrepresenting materials cited in the original and amended complaints—an issue that Appellants' reliance on a subsequent document cannot possibly cure.

Appellants also argue (at 68) that the district court erred in judging the factual accuracy of their claims because it was required to accept well-pleaded allegations as true. But that standard applies only on a motion

to dismiss; a court is not required to accept allegations as true for purposes of sanctions, where the court must consider whether a suit is brought "in bad faith or for an improper purpose."  DE:302:6, 10. *Akkasha v. Bloomingdales, Inc.* is not to the contrary:  that case dealt with an application for fees under Title VII and the ADEA, which is governed by an entirely separate standard.  No. 17-cv-22376, 2020 WL 6820879, at *1 (S.D. Fla. July 20, 2020), *adopted by* 2020 WL 6820878 (S.D. Fla. Sept. 14, 2020).  In fact, in that case, the court noted that it need *not* make any finding of bad faith, and observed there was no motion for sanctions pending.  *See id.* at *4.  The case is wholly inapposite— exactly the type of misleading citation that caused the district court to impose sanctions in the first place.

Appellants finally argue (at 72) that they "put forth good faith, reasonable bases for the claims," asserting that their claims were "supported by existing precedent or, at a minimum, presents a compelling argument for the extension of existing law as to the RICO predicates," and "[a]t the very least, the case law is unsettled or there was a reasonable request for an extension of the law."  Br. 72.

But Appellants never framed their arguments below as an effort to extend existing law or address unsettled questions. *See, e.g.*, DE:237:2 (asserting that "Defendants' position that Plaintiff's claims are time-barred is misguided and contrary to the case law"). Moreover, they continue to advance arguments on appeal as if supported by existing law when they are very plainly not, and are often foreclosed. *See, e.g.*, Br. 24 (challenging RICO predicate act ruling as inconsistent with "existing statutory and case authority"); 40 (asserting that conspiracy to cause malicious prosecution can create stand-alone malicious prosecution charge "where the allegations showed an illegal combination to cause prosecution of the Plaintiff").[11]

And Appellants' new narrative in this regard omits the many claims they pursued despite glaring legal deficiencies. *See supra*, pp. 60-62. Repeatedly making frivolous claims that are plainly barred by existing precedent is evidence of bad faith. *Johnson*, 9 F.4th at 1314 (affirming

---

[11] Appellants' suggestion that they argued for an extension of existing law "as to RICO predicates" is mystifying. They did not advance any such argument below, nor could they: RICO predicate acts are specified by statute, 18 U.S.C. § 1961(1), and the list is "exhaustive," *Prupis*, 529 U.S. at 497 n.2 (2000).

sanctions based on frivolous legal arguments); *Barnes*, 158 F.3d 1212 (same). Purposefully ignoring "fatal flaws," such as the lack of any prosecution to supply the predicate for a claim of malicious prosecution, DE:302:10, is precisely the type of bad faith that can support an award of sanctions. Appellees took pains to explain how precedent barred many of Appellants' claims, and how the facts alleged could not hold up based on the very evidence they cited, yet Appellants ignored the warnings and kept on litigating, "causing the [Appellees] to incur the expenses to which the district court tied its award of sanctions." *Barnes*, 158 F.3d at 1215. That is more than sufficient evidence of bad faith.

### D. The district court properly considered Trump's other litigation conduct.

Appellants claim (at 73-74) that, in imposing sanctions, the district court erred by considering Trump's pattern of other vexatious litigation. But as Appellants acknowledge, this Court's precedents permit a judge to evaluate bad faith for sanctions by considering litigants' behavior in other cases in other courts. *See Johnson*, 9 F.4th at 1313-14; *O'Neal v. Allstate Indem. Ins. Co.*, No. 20-14712, 2021 WL 4852222, at *5 (11th Cir. Oct. 19, 2021) (per curiam). That is precisely what the district court did below. DE:302:21-34. The district court analyzed "similar cases brought

by" Trump demonstrating his use of the courts to fight his political enemies with invented legal grievances (and then fundraising off those lawsuits), *Johnson*, 9 F.4th at 1313-14, and assessed the "abusive" pattern "over many years" and "across numerous forums," *O'Neal*, 2021 WL 4852222, at *5.

Given the clarity of the law on this matter, Appellants appear to raise this issue primarily to suggest (at 73-74) that the district court's analysis "highlight[ed] a bias against [Appellants]." Not so. Courts may take notice of public information, including docket filings, without giving rise to an appearance of bias. *See United States v. Carey*, 929 F.3d 1092, 1105 (9th Cir. 2019) ("courts have regularly held that outside knowledge does not on its own prejudice judicial proceedings"); *Dean v. Colvin*, 585 F. App'x 904, 904-05 (7th Cir. 2014) ("No judge is required to approach a case in complete ignorance. An open mind is required; an empty mind is not.").

This is especially true when evaluating bad faith, because Trump's similar filings across multiple jurisdictions demonstrate that he knew his claims lacked legal merit, yet he continued anyway. *See Jackson*, 898 F.3d at 1360 n.15 (taking note of plaintiff's counsel's similar shotgun

78

pleadings in Alabama state courts when evaluating sanctions); *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 464 (5th Cir. 2020) (affirming that a judge did not need to recuse himself after he reviewed dockets in an attorney's other cases to conclude attorney had engaged in a pattern of frivolous behavior); *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006) (judge's docket search and review of related cases did not require recusal). The district court did not abuse its discretion by taking note of Trump's strategy of "misus[ing] … the courts" "to dishonestly advance [his] political narrative." DE:302:1.

## E.    The district court's fee award was proper.

Appellants also dispute the district court's fee award, claiming (at 75-77) that Appellees incurred fees without a "legitimate financial nexus to the filing of the amended complaint" and "made no effort to mitigate their damages." Appellants waived this argument by failing to object properly when contesting sanctions below. *See supra*, p. 63 & n.9; DE:285:17 (making imprecise and unsupported claims that Appellees' fees were unreasonable); *Gray v. Lockheed Aeronautical Sys.*, 125 F.3d 1387, 1389 (11th Cir. 1997) ("[g]eneralized" objections to time entries "are not particularly helpful and not entitled to much weight"). The district

court did propose Appellees could "readopt" prior arguments in their second motion to dismiss. DE:188. But Appellants ignore that their own unnecessary additions to the amended complaint required that Appellees spend time sorting through the morass of assertions to respond appropriately. And, indeed, Appellees saved substantial resources by collaborating on a joint motion to dismiss the amended complaint.[12]

Additionally, Appellees were conservative in their fee request, and reduced their requested fees to the Florida lodestar. In other words, Appellees still suffered substantial losses in this litigation, paying more to counsel than the sanctions award allowed them to recover. The district court's award of fees was reasonable considering Appellants' conduct.

## IV. The district court properly concluded that the Durham Report did not warrant reconsideration.

At Trump's request, the district court issued an indicative ruling holding that the Durham Report was not newly discovered evidence warranting reconsideration of its dismissal or sanctions orders. DE:343. As the district court observed, the argument failed at the outset because

---

[12] Appellants' citation to *Riddle v. Egensperger*, 266 F.3d 542, 556 (6th Cir. 2001) is inapposite; defendants there pursued extensive, unnecessary discovery for which they sought reimbursement.

the Report was not "newly discovered evidence" under the rule. Not only did it not exist at the time of the initial complaint, but Appellants "also [did] not point to a single fact in the Report that, even with due diligence, they failed to discover." DE:343:5; *see also* DE:343:9. Indeed, Trump asserted in his amended complaint that, at that time, Durham's investigation had already revealed the alleged conspiracy. DE:177:¶7.

More importantly, though, the district court carefully considered the contents of the 300-page report and thoroughly explained why it had no effect on its prior rulings, including because it "doesn't affect the many *legal* conclusions set forth in the MTD Order." DE:343:5. The district court also explained that the Report did nothing to address the various bases for sanctions, including Trump's and his counsel's "factual misrepresentations and exaggerations," "frivolous legal theories foreclosed by existing precedent," and "pattern of misusing the courts," none of which the Report could "retroactively cure." DE:343:14-16. In sum, the district court carefully considered the contents of the Report and explained why it did not warrant relief under Rule 60(b).

Appellants identify no abuse of discretion or legal error in this analysis. Instead, they simply contend (at 80-84) that the Report is "truly

extraordinary" and put forth a cursory and bullet-pointed list that asserts in generalities why the court supposedly should have reconsidered dismissal and sanctions. They do not engage with the district court's thoughtful analysis, but instead ignore it. Appellants' simple disagreement with the district court's conclusions identifies no abuse of discretion, nor would the Report have cured the myriad independent factors compelling dismissal and sanctions.

## V.    The district court correctly denied Appellants' untimely recusal motion.

Appellants argue (at 84) that the district court abused its discretion by failing to recuse itself before providing an indicative ruling on their request for Rule 60(b) relief. But the procedural posture and the relevant law divested the district court of jurisdiction over any such recusal motion. Even if the district court had jurisdiction, Appellants waived the right to pursue recusal, and their arguments for recusal are meritless.

### A.    The district court had no jurisdiction to hear the recusal motion.

Appellants previously sought and received a stay from this Court so they could seek an indicative ruling from the district court as to whether it would reconsider its dismissal in light of the Durham Report. CA11.DE:81. Appellants did not seek to remand the case so that the

district judge could address any issues of recusal, nor did they ask this Court to reassign the matter to a different judge. Nevertheless, more than two weeks after Appellants filed their request for an indicative ruling with the district court, they also filed a motion to disqualify. After full briefing on that motion, the district court denied it, holding first that it lacked jurisdiction over the motion, and, in the alternative, that the motion should be denied on the merits. DE:342.

Appellants do not engage at all with either the district court's jurisdictional analysis or their procedural failure to seek permission from this Court to litigate a recusal motion alongside their motion for an indicative ruling. *See* DE:342:3-4. They simply suggest (at 85) that because the disqualification statute, 28 U.S.C. § 455, provides that a judge "shall" disqualify himself if necessary, the statute operates regardless of whether jurisdiction exists. This is incorrect: jurisdiction is a necessity for any court to act, and "[t]he filing of a notice of appeal … confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). Once an appeal is noticed, a district court only "retain[s] the authority to

act in aid of the appeal, to correct clerical mistakes or to aid in the execution of a judgment that has not been superseded." *Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*, 895 F.2d 711, 713 (11th. Cir. 1990).

Eleventh Circuit Rule 12.1-1 permits district courts to exercise limited jurisdiction during an appeal only when a party files a motion in the Eleventh Circuit "to stay the appeal until the district court rules on the motion before it." 11th Cir. R. 12.1-1(a). Parties who file motions in the district court must follow these procedures "within 14 days after filing the motion." *Id.* As the district court correctly observed, Appellants followed this procedure in seeking an indicative ruling on the Durham Report, but not for the motion to disqualify, so the district court lacked jurisdiction over that motion. DE:342:4.[13]

---

[13] Appellants' cases are not to the contrary. They suggest that "courts in the Tenth Circuit" have "found" that a judge must recuse even "after" proceedings, citing to *Taylor v. Haynes Burns*, which had nothing to do with any jurisdictional issue. No. 13-cv-15, 2013 WL 12329822, at *2 (D.N.M. Jul 26, 2013). That case relies, in turn, on *United States v. Cooley*, where the Tenth Circuit considered whether a district court needed to recuse during post-trial proceedings, but before any appeal was filed. 1 F.3d 985, 992 (10th Cir. 1993). This plainly offers Appellants no help—and, indeed, the Tenth Circuit noted that Section 455 "is waivable and, therefore, not jurisdictional in nature." *Id.* at 996 n.9. Appellants'

## B.    Appellants' recusal motion was untimely.

Appellants' disqualification motion was also untimely.  "Although § 455 does not include an explicit timeliness requirement, a motion to disqualify a judge must nonetheless be filed within a reasonable time after the grounds for the motion are ascertained." *Jallali v. U.S. Funds*, 573 F. App'x 915, 916 (11th Cir. 2014).  "An issue involving recusal cannot be used as an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs." *Bivens Gardens Off. Bldgs. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 913 (11th Cir. 1998).

Far from being filed "within a reasonable time after the grounds for the motion [were] ascertained," *Jallali*, 573 F. App'x at 916, Appellants did not file a recusal motion based on the supposedly biased dismissal order until after the district court had adjudicated the pending requests for sanctions, they had appealed, the appeal was pending, and they sought an indicative ruling of the Durham report—but not for recusal. All this is notwithstanding their assertion that *the dismissal order itself*

---

remaining cases (at 85-86) also do not address whether a district court must recuse even in the absence of jurisdiction.

gave rise to a basis to recuse.  DE:335:2.  The request was untimely several times over.[14]  And having failed to seek disqualification promptly in the district court after that dismissal order, they waived any right to argue on appeal that the district court was dutybound to recuse.

## C.    Appellants' allegations of bias are meritless.

Appellants' arguments for recusal also fail on the merits. Appellants assert (at 86) that "[t]he district court held that Appellants' motion lacked merit simply because the case itself was frivolous."  This mischaracterizes the district court's ruling, which carefully considered the standard for recusal and Appellants' arguments.    DE:342:5-8. Appellants do not address that analysis, much less demonstrate that the district court abused its discretion.

The general rule under Section 455 is that any alleged bias warranting recusal "must stem from an extrajudicial source."  *Liteky v. United States*, 510 U.S. 540, 544-45 (1994).  "Judicial rulings almost

---

[14] Indeed, Trump first moved for recusal at the outset of the case in April 2022, arguing that Judge Middlebrooks's appointment by President Clinton required recusal.  DE:21.  When Trump appealed the district court's dismissal, he could have challenged the district court's denial of the initial recusal order.  He failed to do that, too.

never constitute a valid basis" for recusal. *Id.* at 555. When a request for recusal is based on a court's order, the order must reveal bias "so extreme as to display clear inability to render fair judgment." *Id.* at 551. This is a very high bar. And, indeed, this Court will "affirm a district judge's refusal to recuse himself unless we conclude that the impropriety is clear and one which would be recognized by all objective, reasonable persons." *United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999).

"[A] judge's remarks in a judicial context" warrant recusal only when they "demonstrate such pervasive bias and prejudice that it constitutes bias against a party," but "[n]either a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias." *Hamm v. Members of Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983). This is especially true when the expressions of judicial frustration arise from a party's own misconduct, like that of the Appellants here. In *Jallali*, for example, this Court affirmed the denial of a recusal motion because "[t]he orders, language, and conduct [Plaintiff] complains of [we]re the district court's descriptions of and attempts to address [Plaintiff] and [his] counsel's misconduct in the proceedings before it." 573 F. App'x at 916. "Were

87

such actions sufficient to establish the pervasive bias and prejudice necessary to obtain recusal based on bias not stemming from extrajudicial sources," this Court continued, "district judges would be powerless to address misconduct without subjecting themselves to recusal." *Id.*

Appellants focus on a few phrases—out of almost a hundred pages of judicial rulings—that they contend show bias against them. But as the Supreme Court held in *Liteky*, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." 510 U.S. at 555-56 & n.3. Thus, neither "expressions of impatience, dissatisfaction, annoyance, and even anger" nor "ordinary admonishments" to counsel warrant recusal. *Id.* at 556.

This Court has repeatedly agreed. In *Jallali*, this Court recognized that such judicial comments do not warrant recusal. 573 F. App'x at 916. The same was true in *United States v. Perkins*, where no "objective, fully informed lay observer would entertain significant doubt about the district judge's impartiality" where, "[t]o the extent that some of the district judge's comments evince frustration with [a party], that

88

frustration stems solely from judicial sources"—that is, from the party's litigation conduct.  787 F.3d 1329, 1342-43 (11th Cir. 2015).

Here, the language Appellants highlight simply reflects the district court's considered judgment that Trump's suit was meritless and brought for performative political reasons.  The court wrote well-reasoned and thorough opinions to that effect and, in the sanctions orders, made findings that Trump and his counsel pursued their claims in bad faith.  That is not bias; it is adjudication.

Appellants also argue (at 90) that the district court's "reference to information and material outside the record was improper and created the appearance of bias."  This, too, is incorrect.  As explained above, *supra*, pp. 77-79, and by the district court, *see* DE:342:6-8, the district court properly considered Trump's conduct in other litigation while evaluating sanctions.  Moreover, a court's taking notice of public information, including public court filings, is part of this Court's approved approach in evaluating whether a suit is brought in bad faith, *supra*, pp. 70-79; DE:302:21 (citing authority), and the district court's faithful application of that precedent shows neither actual bias nor creates an appearance of bias under Section 455.

Appellants rely on *United States v. Carey*, 929 F.3d 1092 (9th Cir. 2019). But there, the Ninth Circuit affirmed the district court's denial of a motion to recuse premised on the court's citation to a press article outside the record, observing that "courts have regularly held that outside knowledge does not on its own prejudice judicial proceedings," and "[w]e cannot expect judges to live as moles, roving about the limited underground landscape of the official record but never perceiving the illuminated world at the surface." *Id.* at 1105.

"[T]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is," and, "a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (per curiam). Appellees argued below that Trump's suit was brought for an improper purpose in part because he was "a serial litigant who has brought several previous, dismissed lawsuits against his perceived foes." DE:287:8. That the district court noted this and similar conduct in evaluating the arguments regarding bad faith—or in carefully and thoroughly adjudicating the other issues in this case—does not suggest any bias, much less require recusal.

## CONCLUSION

For all the reasons above, the judgments and opinions of the district court should be affirmed.  This Court should affirm dismissal on both the untimeliness of the claims and the several independent failures to allege necessary elements of the claims; affirm the imposition of sanctions; affirm the district court's indicative ruling denying the Rule 60(b) motion; and affirm the district court's denial of the motion to recuse.

Dated:  June 3, 2024                    Respectfully submitted,

                                        WILLIAMS & CONNOLLY LLP

                                        By: */s/ David E. Kendall*
                                            David E. Kendall

/s/ David Oscar Markus                  David E. Kendall
David Oscar Markus                      Katherine M. Turner
MARKUS/MOSS PLLC                        Michael J. Mestitz
40 NW 3rd Street, PH 1                  James N. Sasso
Miami, FL 33128                         WILLIAMS & CONNOLLY LLP
Tel:  (305) 379-6667                    680 Maine Avenue, S.W.
                                        Washington, DC 20024
                                        Tel:  (202) 434-5000
                                        Fax:  (202) 434-5029
                                        dkendall@wc.com

                *Attorneys for Hillary Rodham Clinton*

/s/ Nancy E. Hart                       /s/ F. Joseph Warin
Nancy E. Hart                           F. Joseph Warin
200 Park Avenue                         Katherine Moran Meeks
New York, NY 10166-0193                 1050 Connecticut Avenue, N.W.
Tel:  212.351.4000                      Washington, D.C.  20036-5306
Fax:  1 212.351.6273                    Tel:  202.955.8500
nhart@gibsondunn.com                    Fax:  202.467.0539
                                        fwarin@gibsondunn.com

                *Attorneys for Perkins Coie LLP*

/s/ Robert P. Trout
Robert P. Trout
Paola Pinto (Fla. Bar No. 1013933)
SCHERTLER ONORATO MEAD
& SEARS
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Tel:  (202) 628-4155
rtrout@schertlerlaw.com
ppinto@schertlerlaw.com

*Attorneys for HFACC, Inc. and John Podesta*

/s/ Gerald Edward Greenberg
Gerald E. Greenberg
Florida Bar No. 440094
ggreenberg@gsgpa.com
GELBER SCHACHTER
&GREENBERG, P.A.
SunTrust International Center
One Southeast Third Avenue,
Suite 2600
Miami, FL 33131-1715
Tel:  (305) 728-0950
efilings@gsgpa.com

Carmen Iguina González
Kaplan Hecker & Fink LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
Phone: (212) 763-0883
ciguinagonzalez@kaplanhecker.com

/s/ Roberta A. Kaplan
Roberta A. Kaplan
Shawn G. Crowley
Kaplan Hecker & Fink LLP
350 5th Avenue, 63rd Floor
New York, NY 10118
Tel:  (212) 763-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com

*Attorneys for Democratic National Committee, DNC Services Corporation, and Debbie Wasserman Schultz*

/s/ Debbie P. Klauber

Debbie P. Klauber
  (Fla. Bar No. 55646)
HALICZER, PETTIS &
SCHWAMM
One Financial Plaza
100 S.E. 3rd Ave., Seventh Floor
Fort Lauderdale, FL 33394
Tel:  (954) 523-9922

/s/ Reid J. Schar

Reid J. Schar
April A. Otterberg
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Tel:  (312) 222-9350

*Attorneys for Marc Elias*

/s/ Roberto Martinez

Roberto Martínez
  (Fla. Bar No. 305596)
Zachary Lipschultz
  (Fla. Bar No. 123594)
COLSON, HICKS, EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel:  (305) 476-7400
bob@colson.com
zach@colson.com

/s/ Sean M. Berkowitz

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 N. Wabash, Suite 2800
Chicago, IL 60611
Tel:  (312) 876-7700
sean.berkowitz@lw.com

/s/ Stephen P. Barry

Stephen P. Barry
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
(202) 637-2200
stephen.barry@lw.com

*Attorneys for Michael Sussmann*

/s/ Jonathan Edward Levine

Jonathan Edward Levine
   (Fla. Bar No. 937711)
Levine & Associates, PLLC
5311 Lee Highway
Arlington, VA 22207
Tel:  (703) 525-2669

/s/ George R.A. Doumar

George R.A. Doumar
Mahdavi, Bacon, Halfhill &
Young PLLC
11350 Random Hills Road
Suite 700
Fairfax, VA 22030
Tel:  (703) 352-1300

*Attorneys for Charles Halliday Dolan, Jr.*

/s/ Brian L. Stekloff

Brian L. Stekloff
Sarah E. Neuman
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  (202) 847-4000
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com

*Attorneys for Jake Sullivan*

/s/ Andrew J. Ceresney

DEBEVOISE & PLIMPTON LLP
Andrew J. Ceresney
Wendy B. Reilly
66 Hudson Boulevard
New York, NY 10001
Tel:  (212) 909-6000
aceresney@debevoise.com
wbreilly@debevoise.com

*Attorneys for Robert E. Mook*

/s/ Adam S. Fels
Adam S. Fels
FRIDMAN FELS & SOTO PLLC
2525 Ponce de Leon Blvd.
Suite 750
Coral Gables, FL 33134
Tel: 305-569-7701
afels@ffslawfirm.com

/s/ Joshua A. Levy
Joshua A. Levy
Rachel Clattenburg
Kevin P. Crenny
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Suite 1200
Washington, D.C. 20006
Tel: 202-845-3215
Fax: 202-595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
kcrenny@levyfirestone.com

*Attorney for Fusion GPS, Peter Fritsch, and Glenn Simpson*

/s/ Joshua Berman
Joshua Berman
CLIFFORD CHANCE US LLP
2011 K Street, NW
Washington, D.C. 20006
Tel. (202) 912-5000
Fax (202) 912-6000
Joshua.Berman@CliffordChance.com

/s/ Benjamin Peacock
Benjamin Peacock
CLIFFORD CHANCE US LLP
New York, New York 10019
Tel. (212) 878-8000
Fax (212) 878-8375
Benjamin.Peacock@CliffordChance.com

/s/ Adam Fels
Adam Fels
   (Fla. Bar No. 0114917)
FRIDMAN FELS &
SOTO, PLLC
2525 Ponce de Leon Blvd.,
Suite 750
Coral Gables, FL 33134
Tel. (305) 569-7701
Afels@ffslawfirm.com

*Attorneys for Bruce Ohr and Nellie Ohr*

/s/ Franklin Monsour Jr.
Franklin Monsour Jr.
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852
Tel:  (212) 547-5554
fmonsour@mwe.com

*Attorneys for Igor Danchenko*

/s/ Samantha L. Southall
Samantha L. Southall
BUCHANAN INGERSOLL &
ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Tel:  (215) 665 8700
Fax (215) 667 8760
samantha.southall@bipc.com

/s/ Jennifer Olmedo Rodriguez
Jennifer Olmedo Rodriguez
  (Fla. Bar No. 605158)
BUCHANAN INGERSOLL &
ROONEY PC
2 South Biscayne Blvd.
Suite 1500
Miami, Florida 33131
Tel:  (305) 347 4080
jennifer.olmedo-
rodriguez@bipc.com

*Attorneys for Neustar, Inc.*

/s/ John M. McNichols
John M. McNichols
Allison S. Eisen
Kathryn E. Garza
WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
Tel:  (202) 434-5000
jmcnichols@wc.com

/s/ James E. Gillenwater
James E. Gillenwater
  (Bar No. 1013518)
GREENBERG TRAURIG P.A.
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
Tel:  (305) 579-0500
Fax:  (305) 579-0717
gillenwaterj@gtlaw.com

*Attorneys for Neustar Security Services*

/s/ Steven A. Tyrrell
Steven A. Tyrrell
BROWN RUDNICK
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
Tel:  (202) 536-1700
Fax:  (202) 536-1701
styrell@brownrudnick.com

*Attorneys for Rodney Joffe*

/s/Enjoliqué Aytch Lett
Enjoliqué Aytch Lett (Fla. Bar No. 0104881)
Akiesha Gilcrist Sainvil (Fla. Bar No. 1003260)
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Tel:  (305) 579-0500
Fax:  (305) 579-0717
enjolique.lett@gtlaw.com
akiesha.sainvil@gtlaw.com

*Attorneys for Orbis Business Intelligence*

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, David E. Kendall, counsel for appellee Hillary Rodham Clinton and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and the Court's grant of appellees' motion for an extension of word count to 18,000 words, that the attached Joint Brief of Appellees is proportionately spaced, has a typeface of 14 points or more, and contains 17,975 words.

*/s/ David E. Kendall*
David E. Kendall

JUNE 3, 2024

## CERTIFICATE OF SERVICE

I, David E. Kendall, counsel for appellee Hillary Rodham Clinton and a member of the Bar of this Court, certify that, on June 3, 2024, I electronically filed the foregoing brief with the United States Court of Appeals for the Eleventh Circuit by using the appellate NextGen System. I certify that all participants in the case are registered NexGen users and that service will be accomplished by the appellate NextGen system.

/s/ David E. Kendall
David E. Kendall

JUNE 3, 2024