IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 22-13410
(CONSOLIDATED WITH CASE NOS: 22-14099; 23-10387; 23-13177)

DONALD J. TRUMP,

*Plaintiff-Appellant,*

v.

HILLARY R. CLINTON, et al.,

*Defendants-Appellees.*

MOTION FOR DAMAGES AND COSTS UNDER FEDERAL RULE OF
APPELLATE PROCEDURE 38

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CV-14102
(THE HONORABLE DONALD M. MIDDLEBROOKS, J.)

Enjoliqué Aytch Lett
Akiesha Gilcrist Sainvil
Greenberg Traurig, P.A.
Wells Fargo Center, Suite 4400
333 Southeast Second Avenue
Miami, Florida 33131
Telephone: 305.579.0500
Enjolique.Lett@gtlaw.com
Akiesha.Sainvil@gtlaw.com

*Counsel for Appellee Orbis Business Intelligence Ltd.*

*Trump v. Clinton, et al., Nos. 22-13410, 22-14099, 23-10387,*
*& 23-13177*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellee Orbis Business Intelligence Ltd. provides this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this review:

ABC Corporations

Aytch Lett, Enjoliqué Dion

Barry, Stephen

Barzee, William R.

Berkowitz, Sean M.

Berman, Joshua Adam

Binnall, Jesse R.

Ceresney, Andrew J.

Clattenburg, Rachel

Clinton, Hillary R.

Crenny, Kevin P.

Crowley, Shawn Geovjian

Danchenko, Igor

*Trump v. Clinton, et al.*
**Case No. 22-13410**

**CERTIFICATE OF INTERESTED PERSONS AND
<u>CORPORATE DISCLOSURE STATEMENT</u>**
(Continued)

Democratic National Committee

DNC Services Corporation

Does, John

Dolan, Jr., Charles Halliday

Doumar, George R.A.

Eisen, Allison

Elias, Marc

Erickson-Pogorzelski, Anthony

Fassbender, Diana Marie

Feldman, Maximillian

Fels, Adam Seth

Fritsch, Peter

Fusion GPS

Garcez, Isabela M.

Garza, Kathryn E.

Gillenwater, James E.

Greenberg, Gerald Edward

Habba, Alina

Habba Madaio & Associates

*Trump v. Clinton, et al.*
**Case No. 22-13410**

**CERTIFICATE OF INTERESTED PERSONS AND
<u>CORPORATE DISCLOSURE STATEMENT</u>**
(Continued)

Harrington, Howard J.

Hart, Nancy E.

HFACC, Inc.

Howard, Eleni Kastrenakes

Hunt, Honorable Patrick

Iguina Gonzalez, Carmen

Joffe, Rodney

Kaplan, Roberta A.

Kendall, David Evan

Klauber, Debra Potter

Levine, Jonathan Edward

Levy, Joshua

Lipshultz, Zachary Andrew

Madaio, Michael T.

Markus, David Oscar

Martinez, Roberto

McNichols, John Marcus

Meeks, Katherine Moran

Mestitz, Michael

*Trump v. Clinton, et al.*
**Case No. 22-13410**

**CERTIFICATE OF INTERESTED PERSONS AND
<u>CORPORATE DISCLOSURE STATEMENT</u>**
(Continued)

Middlebrooks, Honorable Donald M.

Monsour, Jr., Franklin George

Mook, Robert E.

Neuman, Sarah E.

Neustar Security Services

Neustar, Inc.

Ohr, Bruce

Ohr, Nellie

Olmedo-Rodriguez, Jennifer

Orbis Business Intelligence, Ltd.

Otterberg, April A.

Peacock, Benjamin

Perkins Coie LLP

Pettis, Eugene K.

Pinto, Paola

Podesta, John

Reines, Phillipe

Reilly, Wendy B.

Roberts, Jared Joseph

*Trump v. Clinton, et al.*
**Case No. 22-13410**

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**
(Continued)

Sainvil, Akiesha Renee Gilcrist

Sasso, James

Sasson, Jamie Alan

Schar, Reid J.

Schultz, Deborah Wasserman

Sigler, Geoffrey M.

Simpson, Glenn

Soto, Edward

Southall, Samantha

Steele, Christopher

Stekloff, Brian L.

Sullivan, Jake

Sussmann, Michael

Terrell, Stephen R.

Ticktin Law Group

Ticktin, Peter David

Trout, Robert P.

Trump, Donald J.

Turner, Katherine M.

***Trump v. Clinton, et al.***
**Case No. 22-13410**

## CERTIFICATE OF INTERESTED PERSONS AND <u>CORPORATE DISCLOSURE STATEMENT</u>
(Continued)

Tyrrell, Steven

Warin, Francis Joseph

Wylie, John W.

***Trump v. Clinton, et al.***
**Case No. 22-13410**
## CERTIFICATE OF INTERESTED PERSONS AND <u>CORPORATE DISCLOSURE STATEMENT</u>
(Continued)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3 and 27-1(6), Appellee Orbis Business Intelligence Ltd. makes the following statement as to its corporate ownership: Orbis Business Intelligence Ltd. is a private limited corporation formed under the laws of England and wholly owned by Orbis Business International Ltd., which is also a private limited corporation formed under the laws of England.

/s/ *Enjoliqué Aytch Lett*
Enjoliqué Aytch Lett

## APPELLEE'S MOTION FOR DAMAGES AND COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 38

Litigation is a costly endeavor. Consequently, it can be a tool weaponized against another party for vexatious and improper purposes. In that circumstance, as is here, our judiciary has provided wronged parties a remedy through an award of sanctions. In the exercise of that remedy, Appellee Orbis Business Intelligence Ltd. ("Orbis"), pursuant to Federal Rule of Appellate Procedure 38, respectfully submits this Motion for Damages and Costs against Appellant Donald J. Trump ("Trump"), including, but not limited to, an award of attorneys' fees and costs incurred in this appeal.

This appeal, which follows the dismissal of baseless and improper claims brought in the district court, is frivolous because: (1) Trump knew that the Court did not and could not acquire personal jurisdiction over Orbis because he did not effect service of process under the RICO nationwide service provision and there could be no personal jurisdiction under Florida's long-arm statute; and (2) Trump failed to appeal all of the bases on which the district court determined that it did not have personal jurisdiction – specifically Trump does not address the district

1

court's finding of lack of personal jurisdiction pursuant to Florida's long-arm statute. Therefore, the appeal as to Orbis could not have been successful. Notwithstanding his knowledge that there was no basis for the district court to attain jurisdiction over Orbis, Trump pressed forward with his claims against Orbis in the district court, and when losing there, doubled down on the frivolity and brought this appeal. Given Trump's continuous pursuit of infirm litigation against Orbis here and in England, heightened sanctions in the form of double costs are warranted.

## I.    Federal Rule of Appellate Procedure 38 Provides the Authority to Sanction Appellant for Bringing a Frivolous Appeal.

Rule 38 of the Federal Rules of Appellate Procedure governs: "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." "[W]here an appeal is patently frivolous, the court may assess damages to the appellee, including reasonable attorneys' fees and double costs." *Hobson v. Fischbeck*, 758 F.2d 579, 581 (11th Cir. 1985) (citing *Collins v. Amoco Production Co.*, 706 F.2d 1114, 1115 (11th Cir. 1983)). For purposes of Rule 38, a claim is clearly frivolous if it is "utterly devoid of merit." *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d

1363, 1371 (11th Cir. 2016) (quotations omitted). One manner in which a claim is frivolous and devoid of merit is if there is no evidence of the underlying claim. *See, e.g., Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991) (finding an appeal frivolous where plaintiff pressed forward with securities fraud claims and no evidence of fraud). Another manner in which a claim is frivolous is where "the appellant disregarded the applicable law and relied on 'clearly frivolous' arguments." *Merritt v. Lake Jovita Homeowner's Ass'n*, 358 F. App'x 47, 50 (11th Cir. 2009) (citing *United States v. Single Family Residence & Real Property*, 803 F.2d 625, 632 (11th Cir. 1986)).

## II.    This Appeal is Frivolous Warranting Sanctions.

This appeal is frivolous because the arguments of error are "utterly devoid of merit," *Parker,* 835 F.3d at 1371(quotations omitted), and appellant raised "clearly frivolous claims in the face of established law and clear facts." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) (quotations omitted).

### A.    Trump Knew That He Lacked Personal Jurisdiction Over Orbis and Therefore Knew He Had No Basis to Appeal the District Court's Ruling.

Trump contended that the district court may exercise personal jurisdiction over Orbis for two reasons: first, because 18 U.S.C. § 1965(b) authorizes nationwide service of process for RICO claims, and second, even if nationwide service of process was not permitted, he

3

stated a claim under which Florida's long-arm statute would apply and appellees had sufficient minimum contacts with Florida for the district court to exercise personal jurisdiction over them. (*See* DE:262:2-4.) Both grounds were, and remain, meritless.

As Orbis also argued in its motion to dismiss, Trump's initial argument for personal jurisdiction under the federal RICO statute remains incorrect because he never served Orbis according to RICO's nationwide service of process provision. *See Don't Look Media Ltd. Liab. Co. v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021) ("The problem in this case is that RICO does not provide for personal jurisdiction because [the plaintiff] did not serve any party 'according to' RICO's nationwide service of process provision."). The federal RICO statute only authorizes nationwide service of process – meaning service has to occur in this nation. *Id.* at 1293 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000)) ("The RICO service of process provision states that service may be made in any judicial district, which indicates that Congress authorized service only in the judicial districts of the United States and not worldwide."). It "does not authorize international service of process and, as such, cannot be the basis for the assertion of personal jurisdiction over a corporation or individual served abroad." *Verdejo v. HP Inc.,* No. 21-20431-Civ, 2021 U.S. Dist. LEXIS 215726, at *11 (S.D. Fla. Nov. 7, 2021); *see also Don't Look Media Ltd. Liab. Co.*, 999 F.3d at

1293 ("Section 1965(d)'s authorization of service in any judicial district plainly does not authorize service outside the United States.").

Trump does not dispute that Orbis is an England-based entity. Nor does he dispute that service upon Orbis was attempted via The Hague in London, England – not in the United States. Accordingly, "the nationwide service of process provision in RICO cannot provide for personal jurisdiction in this case." *Don't Look Media Ltd. Liab.* Co., 999 F.3d at 1293.

Additionally, Trump's second argument for personal jurisdiction under Florida's long-arm statute was tenuous from the start because Trump failed to allege specific facts that would bring Orbis within Florida's long-arm statute, *see Snow v. Directv, Inc.,* 450 F.3d 1318 (finding "conclusory allegations" that defendant "conspired" with parties that "committed tortious acts in Florida" "insufficient to establish a prima facie case of personal jurisdiction"), and further failed to plead any facts alleging Orbis has minimum contacts with Florida sufficient to comport with the Due Process Clause. *See Melgarejo v. Pycsa Panama*, S.A., 537 F. App'x 852, 859-60 (11th Cir. 2013) ("[T]he Due Process Clause imposes a 'more restrictive requirement' than does Florida's Long-Arm Statute.") (quoting *Internet Sols. Corp. v. Marshall*, 39 So.3d 1201, 1207 (Fla. 2010)); *see also Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1338 (S.D. Fla. 2014) (the burden does not "shift[] to the defendant to challenge plaintiff's allegations by affidavits or other

5

pleadings" unless "the plaintiff pleads sufficient material facts to form a basis for in personam jurisdiction"), *aff'd*, 789 F.3d 1201 (11th Cir. 2015).

Trump's knowledge that district court lacks personal jurisdiction under both 18 U.S.C. § 1965(b) for nationwide service of process and Florida's long-arm statute, as a matter of law, demonstrates he had no basis to bring this appeal and that his identical argument on appeal is utterly without merit – in another word, frivolous.

The circumstances presented here are similar to other instances where sanctions were imposed. For example, this Circuit found that sanctions under FRAP 38 were warranted where, "[i]n a ten page order, the district court set forth the deficiencies in the [plaintiffs'] first amended complaint and stated that it would entertain renewed motions for sanctions from the defendants should the [plaintiffs] plead a similarly deficient RICO claim." *Merritt*, 358 F. App'x at 50. Here, after being put on notice of his faulty service and lack of personal jurisdiction through Orbis' briefing and the district court's order, Trump pursued the appeal anyway.

### B. Trump Failed to Challenge All Bases on Which the District Court Dismissed Orbis.

Trump further knew that his appeal as to Orbis has no chance for success, and therefore is frivolous, where he failed to challenge all grounds on which the district court ruled against him and in Orbis'

favor. Appellant's Initial Brief (CA11:131) does not address, let alone challenge, the district court's ruling that he failed to personal jurisdiction over Orbis under Florida's long-arm statute. In Appellant's Initial Brief, Trump simply states that "defendants had minimum contacts with the United States[.]," (DE:131:41), which relates to Trump's incorrect argument that there is personal jurisdiction over Orbis via the RICO statute's provision for nationwide service of process. *See infra* Sec. II.A.

Trump makes no effort to confront the district court's ruling that the court "may not exercise personal jurisdiction over Defendants Dolan, Joffe, or Orbis consistent with the Florida long-arm statute," (DE:267:21) because (1) "none of the torts alleged in Plaintiff's Complaint survive Rule 12(b)(6) scrutiny. And without these predicate torts, this Court does not have jurisdiction over Defendants under § 49.193(1)(a)(2) of Florida's long-arm statute," and (2) "Plaintiff has not alleged that Defendants 'aimed' any conduct at Florida or could reasonably have anticipated that Plaintiff would be harmed in Florida . . . ." (*id.* at 20.) By not addressing this basis for dismissal in his opening brief, Trump waived that argument. *See United States v. Moran,* 778 F.3d 942, 985 (11th Cir. 2015) (ruling that an argument is waived by "failing to develop any argument on it in his opening brief"); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *Copeland v. Hous. Auth. of Hollywood*, 358 F. App'x 144 (11th Cir. 2009); *Access*

7

*Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[E]valuating an issue on the merits that has not been raised in the initial brief would undermine the very adversarial nature of our appellate system."); *Flanigan's Enters., Inc. v. Fulton Cnty.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (finding waiver where party "fail[ed] to elaborate or provide any citation of authority in support" of its position).

By waiving the argument, Trump understood that the district court's determination that Orbis be dismissed for lack of personal jurisdiction would not be disturbed. Bringing an appeal that would not alter the result below is, quintessentially, a frivolous appeal. *Shirvell v. Gordon*, 602 F. App'x 601, 607 (6th Cir. 2015) (ruling the appeal was frivolous under FRAP 38 because appellant "lacked any reasonable expectation that his argument would alter the district court's judgement"); *Mays v. Chicago Sun–Times*, 865 F.2d 134, 139 (7th Cir. 1989) (ruling the appeal was frivolous under FRAP 38 when the appellant's attorney "could not have had a reasonable expectation that the same arguments would prevail in this court and merely delayed the inevitable by filing this appeal").

## III.   Heightened Sanctions Are Warranted.

### A.   Trump Filed a Patently Frivolous Appeal.

Trump should be sanctioned with double fees because he filed a frivolous appeal where the record undermines his argument and where he failed to address the district court's multiple reasons for dismissal.

8

*See Jackson v. Bank of America, N.A.*, 898 F.3d 1360 (11th Cir. 2018) (awarding double fees for filing a clearly frivolous appeal); *see also Waters v. Comm'r,* 764 F.2d 1389, 1389–90 (11th Cir. 1985) (double fees awarded when appellant had raised a "patently frivolous argument); *United States v. Single Family Residence & Real Prop.*, 803 F.2d 625, 632 (11th Cir. 1986) (awarding sanctions when the appellant disregarded the applicable law and relied on "clearly frivolous" arguments).

Trump's behavior here is similar to plaintiff in *Pelletier v. Zweifel* where double fees were awarded. 921 F.2d 1465 (11th Cir. 1991). Plaintiff brought what the court determined to be a baseless set of civil racketeering, federal, and state securities claims against the defendant, after a series of failed business transactions. Imposing sanctions under FRAP 38 that included reasonable attorney's fees and double costs, the court found "[o]f particular concern" that plaintiff "continued to press forward" with his claims without any evidence underlying his claims, and compelling evidence that undermined their claims. *Id.* at 1523.

Here, Trump possesses no facts that would render jurisdiction over Orbis by a Florida federal court– via the RICO nationwide service provision or otherwise. The defendants, along with the district court, had thoroughly explained why there is not a RICO claim. And Trump was aware that Orbis never committed a tort in Florida from which this action arose, never committed a tort that was felt in Florida from which

9

this action arose, and in any event, did not have any contacts with Florida sufficient to make any jurisdiction over Orbis constitutional. Compounding the issue, Trump continued to pursue the appeal even when his own evidence proffered to the district court demonstrated that he did not serve Orbis according to the RICO nationwide service provision because he purportedly served Orbis under The Hague, *in London, England*. Here, as in *Pelletier*, there is not simply an absence of facts supporting Trump's claims – the facts affirmatively *undermine* his claims. On this record, double costs are warranted. *See also Merritt*, 358 F. App'x at 50 (awarding sanctions to defendants in RICO claims "where there was no factual basis for them when initially pled, and yet the plaintiffs persisted in propagating the litigation and appealing the decisions of the district court").

Viewed objectively, it is clear that Trump is simply using this opportunity to present his unfounded arguments to yet another judicial audience and exploit the coffers of an opposing party. As previously noted, this does not lend him any additional credibility, but rather only serves to waste the time of yet another judicial body and the resources of a litigant having to continuously defend itself against groundless suits. Trump's claims were not the result of a reasonable inquiry, were not well grounded in fact or warranted by existing law, and did not present a good faith argument for the extension, modification, or reversal of existing law. Trump is no closer to establishing personal

10

jurisdiction under the RICO statute and Florida long-arm statute, and thus fails once against to meet the black and white requirements of a personal jurisdiction claim.

## B. Trump Has a Pattern of Weaponizing Litigation Against Orbis.

Trump filed a legal action against Orbis on similarly unfounded grounds in the High Court of Justice of England and Wales, King's Bench Division. The High Court of Justice found in Orbis' favor, striking Trump's claims and entering summary judgment for Orbis. *See* Keenlyside Decl. ¶ 2 (referencing Order of The Honourable Mrs Justice Steyn DBE dated February 1, 2024, in the High Court of Justice of England and Wales, King's Bench Division, Media and Communications List (Claim No: KB-2022-004403) ("the Proceedings")). Upon losing the Proceedings against Orbis, the court awarded Orbis its costs and stated that Trump must make a £300,000 interim payment within 28 days of the date of the order. *See* Keenlyside Decl. ¶ 3 (referencing the Order of The Honourable Mrs Justice Steyn DBE, dated February 6, 2024, in the Proceedings ("Costs Order")). Although the Costs Order was temporarily stayed, *see* Keenlyside Decl. ¶ 5 (referencing the Order of The Right Honourable Lord Justice Warby, dated March 4, 2024), the stay was lifted on March 27, 2024, and Trump has failed to comply with the orders and pay Orbis' costs. *See* Keenlyside Decl. ¶ 6.

Trump's actions in England and in the district court demonstrate that Trump's goal is not to obtain any legitimate legal redress of harm, but to file knowingly baseless claims in order to weaponize legal systems against a party – particularly Orbis here – to waste its resources. Such behavior should not be countenanced. Sanctions – including double costs – are warranted here.

## CONCLUSION

WHEREFORE, for any and all of the foregoing reasons and authority, Orbis, respectfully requests that this Court award damages and double costs pursuant to Federal Rule of Appellate Procedure 38 and enter an Order for relief, including, but not limited to, an award of attorney's fees incurred by this Appellee in defending against this Appeal and any such other and further relief as this Court deems just and proper.

Dated:  June 3, 2024                    Respectfully submitted,

                                        */s/ Enjoliqué Aytch Lett*
                                        Enjoliqué Aytch Lett

                                        Enjoliqué Aytch Lett
                                        Akiesha Gilcrist Sainvil
                                        Greenberg Traurig, P.A.
                                        Wells Fargo Center, Suite 4400
                                        333 Southeast Second Avenue
                                        Miami, Florida 33131
                                        Telephone: 305.579.0500
                                        Enjoliqué.Lett@gtlaw.com
                                        Akiesha.Sainvil@gtlaw.com

12

*Counsel for Defendant-Appellee,*
*Orbis Business Intelligence Ltd.*

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Enjoliqué Aytch Lett, counsel for Appellee Orbis and a member of the Bar of this Court, certify that this document complies with the length limit of Fed. R. App. P. Rule 27(d)(2)(A) because this document contains 3461 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared using Microsoft Word 2010 in Century Schoolbook, 14-point font.

*/s/ Enjoliqué Aytch Lett*
Enjoliqué Aytch Lett

## CERTIFICATE OF SERVICE

I, Enjoliqué Aytch Lett, counsel for Appellee Orbis and a member of the Bar of this Court, certify that, on June 3, 2024, I electronically filed the foregoing brief with the United States Court of Appeals for the Eleventh Circuit by using the appellate NextGen System. I certify that all participants in the case are registered NexGen users and that service will be accomplished by the appellate NextGen system.

/s/ *Enjoliqué Aytch Lett*
Enjoliqué Aytch Lett

JUNE 3, 2024

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NOS: 22-13410, 22-14099, 23-10387, & 23-13177

DONALD J. TRUMP,

*Plaintiff-Appellant*,

v.

HILLARY R. CLINTON, et al.,

*Defendants-Appellees.*

DECLARATION OF ALEX KEENLYSIDE IN SUPPORT OF MOTION FOR
DAMAGES AND COSTS PURSUANT TO FEDERAL RULE OF APPELLATE
PROCEDURE 38

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(CASE NO. 22-CV-14102)
(THE HONORABLE DONALD M. MIDDLEBROOKS, J.)

Enjoliqué Aytch Lett
Akiesha Gilcrist Sainvil
Greenberg Traurig, P.A.
Wells Fargo Center, Suite 4400
333 Southeast Second Avenue
Miami, Florida 33131
Telephone: 305.579.0500
Enjolique.Lett@gtlaw.com
Akiesha.Sainvil@gtlaw.com

*Counsel for Appellee Orbis Business Intelligence Ltd.*

I, Alex Keenlyside, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am a partner in the law firm Bristows LLP ("Bristows"), based in London. Bristows are instructed by Orbis Business Intelligence Ltd. ("Orbis") in relation to proceedings brought against Orbis by Appellant Donald J. Trump ("Trump") in the High Court of Justice of England and Wales, King's Bench Division, Media and Communications List (Claim No: KB-2022-004403) ("the Proceedings") and his subsequent application for permission to appeal in the Court of Appeal, Civil Division (Appeal Ref: CA-2024-000389).

2.      Attached as Exhibit A is the Order of The Honourable Mrs Justice Steyn DBE dated 1 February 2024 in the Proceedings, finding in Orbis's favour following its application for strike out and summary judgment of Trump's claim (the "Strike Out Order").

3.     Attached as Exhibit B is the Order of The Honourable Mrs Justice Steyn DBE, dated 6 February 2024[1] in the Proceedings (the "Costs Order"). The Costs Order awarded Orbis its costs of the Proceedings and stated, at paragraph 2, that Trump must make a £300,000 interim payment within 28 days of the date of the order. The Costs Order further acknowledged £10,000 held by the Court Funds Office as security which, in accordance with the terms of the Costs Order, was transferred by the Court Funds Office to Bristows LLP (and subsequently to Orbis). Accordingly, the amount outstanding pursuant to paragraph 2 of the Costs Order is £290,000.

4.     Trump subsequently applied to the Court of Appeal, Civil Division for permission to appeal the Strike Out Order and paragraph 2 of the Costs Order ("Application for Permission to Appeal"). Trump also sought a stay of paragraph 2 of the Costs Order.

5.     Attached as Exhibit C is the Order of The Right Honourable Lord Justice Warby, dated 4 March 2024 (the "Interim Stay Order"). The

_____

[1] As amended under the slip rule pursuant to para 40.12 of the Civil Procedure Rules 1998 (as amended) of England and Wales on 7 February 2024.

Interim Stay Order granted Trump an interim stay in respect of paragraph 2 of the Costs Order, until Trump's application for a stay or, if sooner, his Application for Permission to Appeal was decided.

6.    Attached as Exhibit D is the Order of The Right Honourable Lord Justice Warby, dated 27 March 2024 (the "Denial of Appeal Order"). The Denial of Appeal Order rejected Trump's Application for Permission to Appeal and lifted the interim stay of paragraph 2 of the Costs Order. As such, payment to Orbis of the outstanding costs amount of £290,000 was due by 28 March 2024. To date, Trump has not made payment to Orbis of the outstanding costs amount of £290,000, and therefore Trump has been in breach of paragraph 2 of the Costs Order since 29 March 2024.

Executed on 3 June 2024.

_____

Alex Keenlyside

# Exhibit A

<u>**Case No: KB-2022-004403**</u>

<u>**IN THE HIGH COURT OF JUSTICE**</u>
<u>**KING'S BENCH DIVISION**</u>
<u>**MEDIA AND COMMUNICATIONS LIST**</u>

**Before** :

<u>**THE HON. MRS JUSTICE STEYN DBE**</u>

**BETWEEN**



**PRESIDENT DONALD J. TRUMP**

<u>**Claimant**</u>

**-and-**

**ORBIS BUSINESS INTELLIGENCE LIMITED**

<u>**Defendant**</u>

---

**ORDER**

---

**UPON** the Claimant's Application by Notice dated 3 April 2023 to amend the Claim Form ("**the Amendment Application**")

**AND UPON** the Defendant's Application by Notice dated 26 May 2023 for strike out and/or summary judgment on the claim ("**the Strike Out Application**")

**AND UPON** the Order of Mr Justice Nicklin dated 9 June 2023 directing both applications be heard together

**AND UPON** hearing Leading and Junior Counsel for the Claimant and Defendant at a hearing before Mrs Justice Steyn on 16 October 2023

**AND UPON** the handing down of the Judgment on the Applications at 10am on 1 February 2024

1

**IT IS ORDERED THAT**

1.      The Amendment Application is refused.

2.      Those paragraphs of the Particulars of Claim identified at paragraphs 99 and 129 of the Judgment are struck out.

3.      Summary judgment for the Defendant on the claim is granted pursuant to CPR 24.2.

4.      The parties shall, by 10 am on 6 February 2024, endeavour to provide to the court an agreed order dealing with all matters consequential upon the Judgment.

5.      In the event the parties are unable to provide an order in agreed form, each party must, by 10am on 6 February 2024, file and serve their respective orders together short, written submissions of no more than 8 pages in length indicating the areas of disagreement and the reasons each party asks the court to make the orders sought.

6.      The determination of all matters consequential upon the handing down of the Judgment shall be adjourned until 7 February 2024.

7.      The period for any application for permission to appeal by way of Appellant's Notice shall be extended to 4pm on 28 February 2024.

**Dated 1 February 2024**

2

# Exhibit B

<span style="color:red">**Amended under slip rule CPR 40.12 on 7 February 2024**</span>

**IN THE HIGH COURT OF JUSTICE**                    **Claim No. KB-2022-004403**

**KING'S BENCH DIVISION**

**MEDIA AND COMMUNICATIONS LIST**

**Before: The Honourable Mrs Justice Steyn DBE**

**Dated: 6 February 2024**

**BETWEEN:-**

**PRESIDENT DONALD J. TRUMP**

**Claimant**

**-and-**

**ORBIS BUSINESS INTELLIGENCE LIMITED**

**Defendant**

**ORDER**

**PURSUANT** to the Order or Mrs Justice Steyn DBE dated 1 February 2024 (the "Order") made following the handing down of the judgment dated 1 February 2024 ([2024] EWHC 173 (KB); '**the Judgment**')

**AND UPON** the parties failing to reach agreement upon the terms of an order dealing with all matters consequential upon the Judgment in accordance with paragraph 4 of the Order

**AND UPON** consideration of the parties' written submissions provided pursuant to paragraph 5 of the Order

**AND UPON** the Order of Mr Justice Nicklin dated 25 July 2023, by which the Claimant was ordered to provide security for the Defendant's costs of the Applications by paying the sum of £10,000 into the Court Funds Office ("**the Security for Costs Order**")

**IT IS FURTHER ORDERED THAT:**

1. The Claimant shall pay the Defendant's costs of and occasioned by the claim on the standard basis, to be subject to detailed assessment if not agreed.

1

2. The Claimant shall make a payment on account of the costs ordered to be paid by paragraph 1 of this order in the sum of £300,000 within 28 days of the date of this Order.

3. In part payment of the payment on account of costs referred to in paragraph 2 above, the funds paid into the Court Funds Office by the Claimant pursuant to paragraph 1 of the Security for Costs Order shall be transferred by the Court Funds Office to the Defendant's solicitors, Bristows LLP, within 14 days of the date of this Order.

**Reasons**

Although the terms of paragraph 1 differed in the drafts provided by the parties, there was no dispute that the Claimant should pay the Defendant's costs of the entire claim, nor that those costs should be assessed on the standard basis, subject to detailed assessment if not agreed.

The area of dispute concerns the payment on account. The Defendant states its total costs of the claim are £634,356.66 (excluding VAT, for which there is no claim from the Claimant). The Defendant seeks a payment on account in the sum of £444,000, which equates to about 70% of that figure. The Claimant submits that the Defendant's costs are so high, in circumstances where the claim has been summarily dismissed at an early stage, before any defence has been filed, that the Court should make no order for a payment on account at this stage, instead giving directions for an exchange of a costs schedule, comments on that schedule and, in default of agreement, a further determination of the Court as to the sum to be paid on account.

There is force in the Claimant's contention that the costs claimed are very high. The rates are above the standard rates and, although some uplift may be warranted to reflect the fact that this is a specialist area, it seems to me it is likely there would be a reduction on detailed assessment. The hours are very high, amounting to 1095 hours, of which nearly a quarter have been charged at Partner (Band A) rate of £513. The number of hours compares to 351 hours chargeable time and total costs in the order of £325,000 said to have been incurred by the Claimant. I bear in mind the extensive nature of the evidence, and the importance of the hearing, albeit it lasted only one day. Nevertheless, there is a real likelihood that the claimed costs will be reduced on the grounds of duplication, matters which have been dealt with at too high a level and/or proportionality. In addition, the disbursements figure of £228,418.92, over £200,000 is attributable to Counsel, is high in circumstances where there has been a single one-day hearing.

However, I am not persuaded that it would be sensible to give the directions proposed by the Claimant. That would simply incur further costs, unnecessarily, in circumstances where the essential principles regarding liability to make a payment on account, and the basis for assessment of the amount are agreed. It seems to me that I have sufficient information to determine the appropriate amount. Bearing in mind the concerns I have expressed regarding the costs figures put forward by the Defendant, I have significantly reduced the payment on account to a sum that is a little below 50% of the total figure claimed. It is likely that detailed assessment would result in the Claimant being liable to pay at least this sum.

The Claimant has sought 28 days to pay, rather than the 14 days proposed by the Defendant. I consider it just in the circumstances to allow that period.

The Defendant's submissions addressed permission to appeal. However, it is unnecessary to consider that issue as no application for permission to appeal has been made.

# Exhibit C



# IN THE COURT OF APPEAL, CIVIL DIVISION

**REF: CA-2024-000389**

**PRESIDENT DONALD J. TRUMP    –v–    ORBIS BUSINESS INTELLIGENCE LIMITED ★**

CA-2024-000389

## ORDER made by the Rt. Hon. Lord Justice Warby

On consideration of applications by the claimant/applicant for (1) a stay of execution ("the Stay Application") in respect of paragraph 2 of the order of Steyn J dated 6 February 2024 ("the Costs Order") by which the applicant was ordered to make a payment on account of costs by 5 March 2024 and (2) an extension of time for filing his appellant's skeleton argument ("the EOT application").

And on consideration of the papers and without an oral hearing

| **Decision:** |
| --- |

1. Determination of the Stay Application is adjourned. Directions as follows:-
    1.1. The respondent must file and serve any evidence and submissions to be relied on by 4pm on Monday 11 March 2024.
    1.2. The applicant must file and serve any evidence and submissions in reply by 4pm on Friday 15 March 2024.
    1.3. The court will then determine the Stay Application on the papers.

2. In the meantime an interim stay of execution is granted in respect of the Costs Order: no steps by way of execution shall be taken until after the court has determined the Stay Application or, if sooner, the application for permission to appeal.

3. Determination of the EOT Application is adjourned. Directions as follows:-
    3.1. The applicant must by no later than 4pm on 8 March 2024 file and serve
        3.1.1. a skeleton argument in support of his appeal
        3.1.2. a formal application notice in compliance with Part 23 seeking an extension of time for filing the skeleton argument
        3.1.3. any written evidence and any written submissions to be relied on in support of the application.
    3.2. The respondent must by no later than 4 pm on 15 March 2024 file and serve any evidence and any written submissions to be relied on in opposition to the application.
    3.3. The court will then determine the EOT Application on the papers.

Reasons

### *The Stay Application*

1.  The general rule is that costs orders must be met on a "pay as you go" basis. An appeal does not operate as a stay nor is the existence of an application for permission to appeal a sufficient reason to grant one. It has to be shown that the balance of justice lies in favour of a stay. This application is made late, with no clear explanation for the delay, and on a basis which appears to be inconsistent with the applicant's approach in the court below.

2.  On the other hand, the application is not on its face unarguable or obviously bound to fail. Having read what is said in answer to it, I am not persuaded that it is necessary in the interests of justice to decide the application summarily on the basis of evidence and submissions provided in haste, and without giving the applicant a chance to reply. The timetable I have set will allow both sides a full and fair say.

### *The EOT Application*

3.  This application is made in correspondence after the expiry of the deadline for filing the skeleton argument. The applicant therefore needs to satisfy the test for relief from sanctions: see. That appears somewhat challenging. The failure to comply with the rules looks like a significant breach. The reasons given for it are not supported by any evidence nor are they immediately impressive. I am told that the applicant did not instruct his present solicitors until 22 February 2024, three weeks after the decision under challenge. That delay is unexplained. There is then said to have been difficulty obtaining instructions. The mere fact that the applicant is "overseas" is not enough to explain or justify that. It is also said there was a failure to understand the rules, which is hard to excuse.

4.  That said, the appellant's notice and grounds of appeal were filed within the extended time limit provided for by the order dated 1 February 2024. The court will need to decide whether PTA should be granted whatever decision is made on the EOT application. The delay in providing the skeleton argument is relatively modest and there is a promise to file one by Friday 8 March. It is arguable that in all the circumstances it would be just to extend time so that the court's decision on permission to appeal can be informed not only by the grounds and any response to those but also by such supporting argument as the applicant wishes to submit, and a reasoned response to that on behalf of the respondent.

5.  The directions I have given require the applicant to file an application notice (and pay the requisite fee). They will allow him to file evidence and fill in the gaps in the narrative. The directions also give the respondent a fuller opportunity to answer the application, if so minded.

Notes:

1)  Where an application (other than an application for permission to appeal) has been refused on the papers, the applicant may request that the decision be reconsidered.
2)  An application for reconsideration must be filed within 7 days after the party is served with notice of the decision.
3)  The reconsideration will be determined by the same or another judge on paper without an oral hearing; except that the judge determining the reconsideration on paper may direct that the reconsideration be determined at an oral hearing, and must so direct if the judge is of the opinion that the reconsideration cannot be fairly determined on paper without an oral hearing: see CPR 52.24.

Signed: BY THE COURT
Date: 4 March 2024

Case Number: **CA-2024-000389**

# Exhibit D

**IN THE COURT OF APPEAL, CIVIL DIVISION**

REF: **CA-2024-000389 and CA-2024-000389-A**

27 Mar 2024

**TRUMP** –v– **ORBIS BUSINESS INTELLIGENCE LIMITED**

CA-2024-000389

## ORDER made by the Rt. Hon. Lord Justice Warby

On consideration of the appellant's notice and accompanying documents, but without an oral hearing, in respect of applications by the claimant for (1) extensions of time for filing the sealed order below and the appellant's skeleton argument (2) permission to appeal against the orders of Steyn J dated 1 and 6 February 2024 and (3) a stay of execution in respect of paragraph 2 of the Order dated 6 February 2024 by which the applicant was ordered to make a payment on account of costs.

| |
|---|
| **Decision:**  1. Extensions of time granted. 2. Permission to appeal refused. 3. Stay of execution refused. |

**Reasons**

**E  tensions o  time**

1. The appellant's notice was lodged with the court in time but it was not accompanied by a sealed copy of the order dated 1 February 2024 nor a skeleton argument. That was a breach of the requirements of Practice Direction 52C. Paragraph 3(3) of that PD provides that "*at the same time as filing an appellant's notice*" an appellant "*must*" file copies of (a) "*the sealed order … being appealed*" and (g) "*the appellant's skeleton argument in support of the appeal*". An extension of time is therefore required. The principles to be applied are those identified in *R (Hysaj) v SSHD* [2014] EWCA Civ 1633, [2015] 1 WLR 2473.

2. These failures to comply with the PD are serious and/or significant. The explanation provided has some weaknesses: the delay flows in large part from a relatively late change of representation which is unexplained; the new solicitors could have acted rather more promptly in obtaining the order; and the delay in respect of the skeleton argument flowed from a misunderstanding of rules which are quite clear (it seems to have been mistakenly thought that the skeleton argument was one of the additional "*documents for use on an application for permission*" that are dealt with in paragraphs 3(5), 14 and 27 of the Practice Direction).

3. That said, the delay in each instance was short; it has caused no prejudice to the respondent nor to the administration of justice; the new solicitors did act with reasonable diligence to obtain the order; and Counsel acted promptly to prepare the skeleton argument once the error was identified. In all the circumstances the imperatives of efficiency and the need to enforce compliance with the rules are not so weighty as to justify a refusal to consider the application for permission to appeal on its merits. Relief from sanctions is appropriate.

**Permission to a   ea**

**Order o   ebruary 2024**

4. Ground 1: refusal to permit amendment of the claim form.

   4.1. This ground contends, in essence, that the judge was wrong to find that the claim under the DPA 1   8 was a "*new claim*" made after the expiry of the limitation period within the meaning of CPR 17.4.

   4.2. The applicant's argument was that this question should be answered by looking at the claim form (issued on 26 October 2022) and the Particulars of Claim (dated 21 February 2023) and treating the two as a composite statement of the applicant's case. The judge rejected that contention, distinguishing the case of *Evans* v *Cig Mon Cymru* [2008] 1 WLR 2675 on which the applicant relies, and applying the reasoning in *Corelogic Ltd v Bristol City Council* [2013] EWHC 2088 (TCC). She was plainly correct to do so.

   4.3. The only statement of case issued within the limitation period and, on the evidence, the only statement of case drafted within that period was the original claim form. This was clear and unambiguous as to the laws to be relied on. It advanced claims under the DPA 2018 and the UK GDPR only. It made no reference to the DPA 1   8. There is nothing in or about the claim form itself to suggest that it was or may have been intended to incorporate a reference to the 1   8 Act or that the fact that this Act was not mentioned is attributable to any form of clerical or administrative or formal error. Nor is there any extraneous

evidence to that effect. There is no evidence or suggestion that Particulars of Claim advancing a claim under the 1   8 Act had been drafted at the same time. On the contrary, the letter of claim dated 22 December 2022 referred exclusively to the DPA 2018 and UK GDPR. The first mention of the 1   8 Act came in February of the following year. The judge was entitled to find (at [53]-[54]) that the applicant's solicitors intentionally brought the claim only under the DPA 2018 and the UK GDPR and only later did the applicant "*reconsider the scope of the claim*".

4.4. In these circumstances, it cannot be said that the failure to plead the DPA 1   8 in the claim form involved an error of the kind referred to in the authorities. It cannot be maintained that at any time before the expiry of the limitation period the claim form was "*meant to be read together*" with the Particulars of Claim. It is not arguable that the disparities between the documents amount to nothing more than "*internal inconsistency*" within a single composite statement of case.

4.5. There is therefore no basis on which the failure to plead the "*right*" cause of action in a document drafted and issued within the limitation period can be cured by reliance on a different document created afterwards. The fact that, after the expiry of the limitation period, the two documents were served together and *at that time* they were "*meant to be read together*" cannot make a difference to this analysis.

5. Ground 2: limitation – date of knowledge.

5.1. This ground contends that by virtue of s 32 of the Limitation Act 1   80 time should be deemed to run from the date when the applicant first came to know of the Dossier which he maintains was in January 2017.

5.2. Not only is this a new point not raised before the judge, it is also at odds with the case that was then advanced by the applicant. This conceded that it was "*reasonably arguable*" the proposed amendments were first put forward outside the applicable period of limitation. An appeal is usually a review of the decision at first instance. The court of appeal does not usually permit a litigant to run a new case. Only exceptionally would it be prepared to admit an argument inconsistent with the way the case was run before the first instance judge. In this case, no exceptional circumstances are relied on.

5.3. Moreover the concession made below was right and the new argument is untenable.  Even assuming that the applicant could show that the alleged wrong was committed in circumstances falling within s 32, this argument would only defer the end of the limitation period to January 2023. The DPA 1   8 was not relied on until late February of that year, when the Particulars of Claim and draft amended claim form were served.

6. Ground 3: findings that the draft amendments (i) "gave rise to a new cause of action" and/or  (ii) "gave rise to a new set of facts".

6.1. The first limb of this ground contends that the claim under the DPA 1   8 was not a new cause of action. This is another new point which is contrary to the case advanced at first instance. At that stage the applicant, by his then Counsel, conceded that the claim under the DPA 1   8 was a new cause of action.

6.2. The second limb repeats an argument advanced to the judge: that the central factual averments put forward were essentially the same in the claim originally pleaded and in the claim under the DPA 1   8 which it was sought to advance by way of amendment. Accordingly, the argument runs, the claim arose out of the same or substantially the same facts.

6.3. The DPA 1   8 claim plainly was a new cause of action. The claim pleaded in the claim form relied on a legal regime that applied to acts performed on and after 25 May 2018. The DPA 1   8 claim was based on a different legal regime which only applied to acts performed before that date. The DPA 1   8 claim was also a different claim on the facts. The judge gave detailed reasons explaining this second point which are not arguably wrong. Critically, as she explained, the key claims under the 1   8 Act related to the defendant's acts in preparing and disseminating the Memoranda complained of. Those acts were not complained of in the claim form issued in October 2022, which gave no details of the acts complained of but alleged breaches of legal duty which could only have taken place on or after 25 May 2018.

6.4. In any event, the applicant has no real prospect of successfully appealing this aspect of the judge's decision-making, as she decided against him on the additional grounds that even if she had power to allow the amendment the court would have a discretion which would not be exercised in his favour. She gave detailed reasons for reaching that conclusion and the appeal documents contain no challenge to that aspect of her reasoning.

7. Ground 4: striking out on the grounds that damages would be de minimis.

7.1. This ground misreads or mischaracterises the judge's conclusions. Her key finding was that the applicant had no real prospect of obtaining an award of compensation and/or damages in respect of the only claim

which survived the refusal of permission to amend and the striking out, namely the claim under UK GDPR and DPA 2018 in respect of the retention and storage of the Memoranda on and after 25 May 2018.

7.2. The judge reasoned that the evidence showed that processing of this kind was very limited; there was no pleaded claim that any of it caused the applicant any distress; nor was there any evidence to that effect; on the contrary, the applicant was unaware of this processing and his evidence was that distress was caused by dissemination of the Memoranda. Her conclusion was that "*it cannot sensibly be claimed – and the [applicant] did not see to assert – that the mere fact that the [respondent] held copies of the Memoranda caused him distress.*" The judge rejected the contention that damages could be recovered even so, holding that the data protection legislation does not permit an award of compensation in the absence of material damage or distress (see *Lloyd v Google LLC* [2021] UKSC 50, [222] AC 1217*) and that there is no other basis for awarding damages for the mere infringement of the statutory right.

7.3. No arguable challenge to that reasoning has been put forward. The skeleton argument contains nothing on the point.

**Order o  ebruary 2024**

8. Ground 5: making a costs order without summary assessment or a compliant costs statement.

8.1. Before the judge it was expressly agreed on the applicant's behalf that he should be ordered to "*pay the defendant's costs of the claim on the standard basis to be assessed if not agreed*". He disputed the respondent's claim for a payment on account of those costs contending that the sums sought were unreasonably high and that further information was required. The applicant agreed, however, that the judge should resolve that dispute on the papers, without a hearing. She did so and made an order for payment of  300,000 on account.

8.2. By this ground of appeal the applicant contends that the defendant should have been required to file and serve a costs statement for the purposes of a summary assessment, in the form required by PD44 para  .5. In support of this contention the applicant's skeleton argument submits that the judge's order involved a "de facto" summary assessment.  This is another change of position. The argument is also without merit. Although the hearing in the event took one day so that on the face of things that the general rule in PD44 para  .2 applied, the hearing had been estimated to last two days. In all the circumstances the duty to provide a costs statement (PD44 para  .5) did not apply or it was reasonable for the respondent not to comply with it.

8.3. In any event, the judge did not either in form or in substance make a summary assessment. She ordered detailed assessment with an interim payment on account meanwhile. CPR 44.2(8) provides that where, as here, the court decides not to make a summary assessment but instead to order a detailed assessment of costs, "*it will make an order for a reasonable sum on account unless there is good reason not to do so*": CPR 44.2(8). The judge's order set out detailed and proper reasons for rejecting the applicant's contention that there was good reason not to order a payment on account. It was clearly open to the judge to conclude that she had "*sufficient information to determine the appropriate amount*".

8.4. The judge's decision as to the amount to be paid is not open to reasonable criticism either. Although the sum is high it was legitimate for the judge to conclude that "*it is likely that detailed assessment would result in the [applicant] being liable to pay at least this sum*". In that regard it is relevant to note that the judge was told that the applicant's own costs of the claim were "*of the order of £325,000*".

.   For the reasons set out above an appeal would have no real prospect of success. There is no other compelling reason for the court to hear an appeal.

**Stay o  e ecution**

10. On 4 March 2024 I adjourned this application and granted an interim stay of execution until the sooner of a decision on the stay application or a decision on whether to grant permission to appeal. Permission to appeal having now been refused the application to stay falls away.

Signed: BY THE COURT
Date: 27 March 2024

**Notes**
(1)   Rule 52.6(1) provides that permission to appeal may be given only where –

a) the Court considers that the appeal would have a real prospect of success; or

b)   there is some other compelling reason why the appeal should be heard.

(2)   Where permission to appeal has been refused on the papers, that decision is final and cannot be further reviewed or appealed.  See rule 52.5 and section 54(4) of the Access to Justice Act 1    .

(3)   Where permission to appeal has been granted you must serve the proposed bundle index on every respondent within 14 days of the date of the Listing Window Notification letter and seek to agree the bundle within 4   days of the date of the Listing Window Notification letter (see paragraph 21 of CPR PD 52C).

Case Number: **CA-2024-000389 and CA-2024-000389-A**